Giuseppa PAVANO, as representative of the Estate of Frank Pavano, and 92 other Medicare claimants listed on Schedule "1" attached hereto, individually and on behalf of all others similarly situated, Plaintiffs–Appellants–Cross–Appellees,

v.

Donna E. SHALALA, in her capacity as Secretary of the Department of Health and Human Services, Bruce C. Vladeck, in his capacity as Administrator of the Health Care Financing Administration, Empire Blue Cross and Blue Shield and Group Health Incorporated, Defendants–Appellees–Cross–Appellants.

Nos. 1372, 1695, Dockets 95–6378, 95–6412.

United States Court of Appeals,
Second Circuit.

Argued April 16, 1996.

Decided Sept. 6, 1996.

Craig A. Landy, New York City (Whitney North Seymour, Jr., Peter James Clines, Landy & Seymour, New York City, of counsel), for Plaintiffs–Appellants–Cross–Appellees.

Wendy H. Schwartz, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Marla Alhadeff, Assistant United States Attorney, of counsel), for Defendants–Appellees–Cross–Appellants.

Before: MINER, McLAUGHLIN, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This appeal concerns a class action by Medicare beneficiaries, and their assignees, who claim they are entitled to be reimbursed for medical expenses known as "anesthesia modifiers."

The named Plaintiff–Appellant–Cross–Appellees ("Plaintiffs") include 38 Medicare beneficiaries and 16 physicians who have accepted assignment of Medicare claims from their patients. Plaintiffs appeal from an order and judgment of the United States District Court, Southern District of New York (John S. Martin, Jr., *Judge*), which granted relief in favor of a limited class of plaintiffs. They contend that the district court erred in defining the plaintiff class too narrowly, excluding persons whose Medicare claims had been denied and were no longer pending or amenable to timely suit on January 21, 1994.

We find no error in the district court's order of class certification.

Defendant-Appellee-Cross-Appellants are the Secretary of the United States Department of Health and Human Services and her agents (hereafter "the Government").[1] They contend on their cross-appeal that Plaintiffs' individual and class claims should have been dismissed because Plaintiffs failed to exhaust their administrative remedies. The district court ruled that Plaintiffs were excused from complying with the exhaustion requirement because exhaustion would be futile and would cause irreparable harm to Plaintiffs. We agree with the Government that the district court should not have excused Plaintiffs' failure to exhaust their administrative remedies. We therefore vacate the portion of the district court judgment dealing with anesthesia modifiers and remand.

### Background

Medicare carriers determine reimbursement under Medicare Part B[2] on a "reasonable charge" basis. *See* 42 U.S.C. § 1395u(b)(3). According to the Medicare Carriers Manual, Section 5218, a reasonable charge is determined by the "predominant billing methods" of physicians in the community. Anesthesiologists' billing charges are a function of (1) the procedure involved, (2) the length of time required for the service provided, and (3) increased health risks resulting from the age of the patient, the emergency nature of the situation, the complexity of the procedures, and other such factors. The additional charges based on this third category are the so-called anesthesia modifier charges at issue in this appeal. Plaintiffs were denied reimbursement for anesthesia modifiers by carriers who determined that billing separately for modifiers was not the predominant

---

1. In addition to the Secretary of Health and Human Services, defendants include the Administrator of the Health Care Financing Administration (HCFA), and two insurance carriers—Empire Blue Cross and Blue Shield and Group Health Incorporated—that process claims in the New York area under contract with the HCFA. Because the carriers are authorized agents of the HCFA and, more broadly, the Department of Health and Human Services, *see* 42 U.S.C. § 1395u(a), the Secretary is the real party in interest here, *see* 42 C.F.R. § 421.5(b).

2. Part B is a voluntary, federally subsidized program of supplementary medical insurance for the elderly and disabled that generally reimburses participants or their health care providers eighty percent of the reasonable charge for services. *See* 42 U.S.C. § 1395j to 1395w–4.

practice of anesthesiologists in the community.[3]

Plaintiffs sought administrative review of the carriers' denials. On review, some of the Administrative Law Judges (ALJs) who heard the claims—including ALJ Kenneth G. Levin—reversed the carriers' decisions and awarded modifier reimbursements to the claimants whose cases they heard. Another ALJ, Michael P. Friedman, upheld the carriers' denials. Plaintiffs appealed ALJ Friedman's denials to the Social Security Administration's Appeals Council. Beginning on January 21, 1994, the Appeals Council ordered that more than two-thirds of the cases involving anesthesia modifiers be remanded to "an Administrative Law Judge" for two reasons: (1) evidence relied upon by the ALJ below was missing from the administrative record on appeal, and (2) further testimony about predominant billing practices was deemed necessary. The remanded cases appear to have been randomly assigned to ALJ Levin.

Upon remand, ALJ Levin ruled in favor of the Plaintiffs on the claims that were before him, awarding benefits for anesthesia modifiers. He did so without taking any further testimony regarding predominant billing practices, consistent with his previous determination that billing separately for the modifiers was the predominant practice.

Plaintiffs filed this lawsuit on January 21, 1994—coincidentally, the same day that the remands to ALJ Levin began. The Government moved to dismiss the suit for failure to exhaust administrative remedies. Plaintiffs cross-moved for class certification and judgment on the pleadings. At an unrecorded oral argument on February 17, 1995, Judge Martin apparently suggested that the Appeals Council be given three months to decide whether anesthesia modifier claims were reimbursable. On March 13, 1995, the Gov-

ernment informed the court that the Appeals Council would take final action, and the Council apparently began to process cases to meet the three-month deadline. The Government also informed Judge Martin on March 13th that ALJ Levin had awarded Plaintiffs reimbursement for the modifiers; that in granting this relief, ALJ Levin had seen no need to consider further evidence; and that the evidence missing from the administrative record had been found.

■ Beginning on May 2, 1995, the Appeals Council began to issue final decisions ordering reimbursement for anesthesia modifier claims. On May 11, 1995, before the expiration of the three months during which the Appeals Council was to resolve the anesthesia modifier issue, Judge Martin (who had not been notified that the Appeals Council had begun issuing final rulings awarding anesthesia modifier reimbursements) issued a memorandum opinion. In relevant part, it denied the Government's motion to dismiss for failure to exhaust, holding that Plaintiffs were excused from exhaustion because of futility and irreparable harm. According to the judge's opinion, exhaustion would be futile because the Appeals Council was remanding modifier claims to ALJ Levin, instead of ruling itself, even though it knew that ALJ Levin would grant Plaintiffs the relief they sought. Judge Martin concluded that a two-tiered bifurcated system had developed whereby only claimants who pursued an unnecessarily extended administrative process obtained the modifier reimbursement. "[T]he agency," he maintained, "has demonstrated no inclination to correct its own errors." He found irreparable harm in the fact that Plaintiffs were "elderly beneficiaries in relatively poor health" for whom "time [was] a precious commodity" (quotation omitted). On June 6, 1995, the court certified a limited class, the scope of which Plaintiffs now appeal.[4] When the Appeals Council

---

3. Claims seeking other types of reimbursement were dismissed by the district court and have not been appealed. Therefore, where we refer throughout this opinion to Plaintiffs' "claims" and the district court's "order," we are addressing only the anesthesia modifier reimbursement claims and only the portion of Judge Martin's order that dealt with those claims.

4. As the Government notes, each named Plaintiff appears now to have received the relief he or she sought, either from the administrative process or by being included in the certified class below. Thus, Plaintiffs appear to be appealing on behalf of unnamed potential class members whom they believe the district court erroneously excluded from its certified class. We note that "the termination of a class representative's claim does not

was informed, on or about May 17, 1995, of the court's opinion, it halted processing anesthesia modifier claims "in order to avoid interference with the Court's jurisdiction." Aff. of Julie Cross–Cole.

On June 16, 1995, the Government brought the Appeals Council's decision to the district court's attention and noted that the decision assured Plaintiffs all the relief on the merits that they had sought. Accordingly, the Government "consent[ed] to judgment with respect to all remaining valid unpaid anesthesia modifier claims ..." of the named Plaintiffs and members of the class certified by the court. A stipulation was entered between the parties, with each side reserving their right to appeal, and the court entered judgment.

## Discussion

### A. Exhaustion

■ Under 42 U.S.C. § 405(g), a federal court may review a Medicare determination such as this only where a claimant has obtained a final agency decision. Denial of relief by the Appeals Council is a final decision of the Secretary, which may be appealed to the district court (if the aggregate amount in controversy is $1000 or more). See 42 U.S.C. §§ 405(g), 1395ff(b)(1)(C) and (b)(2)(B). The Appeals Council had not ruled when Plaintiffs commenced this action in the district court. Therefore, as Judge Martin properly noted, the action could proceed only if the court found it proper to excuse the exhaustion requirement.

■ As we have noted, "[e]xhaustion is the rule, waiver the exception." Abbey v. Sullivan, 978 F.2d 37, 44 (2d Cir.1992). Parties are generally required to exhaust their administrative remedies, in part because of concerns for separation of powers (i.e., the need to limit judicial interference in the agency process) and the need to conserve judicial resources.

The factors courts have cited to excuse failure to exhaust are: (1) that the claim is collateral to a demand for benefits; (2) that

exhaustion would be futile; and (3) that plaintiffs would suffer irreparable harm if required to exhaust administrative remedies. Id. at 44; see also Bowen v. City of New York, 476 U.S. 467, 483, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986); Mathews v. Eldridge, 424 U.S. 319, 330–32, 96 S.Ct. 893, 900–01, 47 L.Ed.2d 18 (1976). The district court concluded that futility and irreparable harm favored excusing Plaintiffs' failure to exhaust. The Government argues that all three factors weigh against Plaintiffs. We agree with the Government that exhaustion should not have been excused.

First, the issue Plaintiffs raise in their suit is not collateral to their demand for Medicare benefits. The gravamen of their complaint was that the Government wrongly denied them benefits. The issue in suit is identical to the administrative demand. By their suits Plaintiffs are challenging the lawfulness of the denial, and not seeking relief other than that sought in the administrative proceeding.

Plaintiffs were not challenging the validity of agency regulations, but challenging the application of regulations to them. As we have noted, "[t]he policies favoring exhaustion are most strongly implicated by actions [such as the one at bar] challenging the application of concededly valid regulations." Abbey, 978 F.2d at 45 (emphasis omitted); see also City of New York, 476 U.S. at 484–85, 106 S.Ct. at 2032 (agency's "mere deviation from the applicable regulations .... [is] fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation"); Mercer v. Birchman, 700 F.2d 828, 832 (2d Cir.1983) (Friendly, J.) (plaintiffs' Medicare claims, attempting to have Secretary enforce regulations, "were the paradigm of those where resort to the internal procedures of the [Secretary] should be required").

Second, the record in no way suggests that agency review would have been futile. The contrary is shown by the fact that before Judge Martin concluded, in his order of May 11, 1995, that exhaustion would be futile, the

---

moot the claims of the unnamed members of the class." County of Riverside v. McLaughlin, 500 U.S. 44, 51–52, 111 S.Ct. 1661, 1667, 114

L.Ed.2d 49 (1991) (quotations omitted); see also Comer v. Cisneros, 37 F.3d 775, 797 (2d Cir. 1994).

Appeals Council ruled on some claims and approved reimbursements for anesthesia modifiers.

■ Third, we believe it was error to conclude across the board that irreparable harm would result from enforcing the exhaustion requirement. Although it is true that some of the claimants are sick or elderly persons who might have suffered harm by waiting for reimbursement, the majority of the *claims* at issue were to compensate anesthesiologists for undercompensation.[5] Such claims do not give rise to irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952–53, 39 L.Ed.2d 166 (1974); *see also Abbey*, 978 F.2d at 46 (mere inconvenience and expense of protracted administrative proceedings do not excuse failure to exhaust).

We continue to believe that courts should be flexible in determining whether exhaustion should be excused. *Abbey*, 978 F.2d at 44. Determinations "should also be guided by the policies underlying the exhaustion requirement." *City of New York*, 476 U.S. at 484, 106 S.Ct. at 2032. As we have noted, "[n]o one element is critical to the resolution of the [exhaustion] issue; rather, a more general approach, balancing the competing considerations to arrive at a just result, is in order." *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir.1990). Because each of the relevant factors weighed against Plaintiffs, we conclude that the district court should not have waived the requirement of exhaustion.

The district court found this case to be similar to *Jones v. Califano*, 576 F.2d 12 (2d Cir.1978). We believe it is significantly different. The *Jones* plaintiffs were disabled financial aid recipients who challenged the Secretary's method of calculating their dis-

ability benefits. The Appeals Council had ruled on three occasions that the Secretary's method of calculation was wrong, and yet, for cases not pursued to the Appeals Council, the Secretary refused to change the calculation method. *Id.* at 17. Thus, individuals who appealed all the way to the Council got the benefits they were entitled to, while others similarly situated did not. *Id.* at 18. We found that this was "unequal justice," which raises "colorable questions of equal protection and due process." *Id.* As a result, we held:

> When the administrative process becomes bifurcated, as when independent administrative judges interpret statutes in adjudicated cases that may not technically bind the Secretary, care must be taken lest certain needy beneficiaries, because of the limitations of poverty or ignorance, fail to receive the full amount of benefits to which they are entitled. Thus, we find it appropriate to imply a waiver of the exhaustion requirement when, as in this case, there is a stalemate defying judicial review.

*Id.* at 20. We also noted that this unusual holding was "limit[ed] ... to the combination of circumstances" of that case. *Id.* at 21.

The case at bar is not one in which the agency is refusing to follow its own final rulings. While there was unfortunate delay in the processing of Plaintiffs' claims, it was not a matter of administrative intransigence, such as we found in *Jones*.[6] Furthermore, the *Jones* case presented constitutional problems, which fell within the court's, as opposed to the agency's, expertise.[7] *Id.* at 18.

Finally, Plaintiffs urge us to abandon the three factor test of *Abbey*, in favor of a new rule that the exhaustion requirement is auto-

---

5. The 16 anesthesiologist plaintiffs were seeking compensation for 118 claims of patients who had assigned their Medicare reimbursement rights to their doctors. The 38 patient Plaintiffs were seeking compensation only for their individual claims.

6. Nor do plaintiffs make a convincing argument that the Appeals Council's remand to ALJ Levin was made in a bad faith attempt to avoid establishing an agency-wide policy. The Council found remand necessary because some of the administrative record was missing on appeal and because further factual development was neces-

sary; the legitimacy of these justifications is not undermined by the fact that the record was later made complete or that ALJ Levin saw no need for further factfinding.

7. In an addendum to their reply brief, Plaintiffs submit new evidence suggesting that the alleged *Jones*-like bifurcation of the administrative process occurred as early as 1992. We are not inclined to consider such evidence, since it was not presented to the district court. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

matically waived any time agency review takes more than six months. Although we are sympathetic to the frustration of waiting for agency action, the reasons for the exhaustion requirement remain valid, *see, e.g., City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032, and therefore we reject Plaintiffs' suggested rule.

Because we find no adequate basis for dispensing with the exhaustion requirement, we vacate the judgment of the district court insofar as it granted coverage for anesthesia modifiers charges, and we remand the case to the district court.[8]

### B. *Equitable Tolling and Class Certification*

■ Plaintiffs contend the district court certified the plaintiff class too narrowly. They argue that all beneficiaries whose modifier claims were denied by insurance carriers between January 20, 1987, and March 1, 1989, were entitled to be part of the class that received modifier reimbursement pursuant to the parties' stipulation, regardless whether they preserved their claims by appealing. They rely on *Jones,* 576 F.2d at 20, for the proposition that similarly situated beneficiaries should be treated alike and that beneficiaries should not be deprived of benefits simply because they did not pursue administrative appeals. Citing *City of New York, supra,* and *Dixon v. Shalala,* 54 F.3d 1019 (2d Cir.1995), they argue further that the equitable tolling of the 60–day statute of limitations (for filing in the district court following a final agency decision) should have applied to all beneficiaries because inequitable agency conduct existed before remands to ALJ Levin began on January 21, 1994, and because the rejected beneficiaries had no

reason to know of the agency's wrongful conduct.

The district court properly rejected this argument. Much of Plaintiffs' argument relies on their view that the Appeals Council's remand was "a mere sham and pretext," Plaintiffs' Reply Br. at 21, and that the appeals process here had become hopelessly bifurcated, as in *Jones.* As discussed above, we reject this view.

Moreover, equitable tolling for all beneficiaries is not warranted under *City of New York* and *Dixon,* in which there was evidence of (1) systematic misapplication of the law, *Dixon,* 54 F.3d at 1021; (2) concealment which prevented beneficiaries from knowing of a violation of rights, *id.* at 1031; and (3) "unusual" protectiveness for disability claimants, *id.* at 1033–34. First, there was in this case no misapplication of statutory or regulatory policy—at least not before the allegedly improper January 21, 1994, remand—but rather a good faith difference of opinion among ALJs as to the predominant billing practice for anesthesia modifiers. Second, there was no concealment; the administrative decisions were based on a provision in a published document, Medicare Carriers Manual § 5218. Third, the plaintiffs are not disability claimants; there is no reason to accord them a special protective rule.

Accordingly, we find no error in the district court's ruling that January 21, 1994, was the proper cut-off date for including class members because that was when Plaintiffs filed their class action, which independently tolls the statute of limitations, *see Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983).[9]

---

**8.** As noted above, our order refers only to the portion of the district court's judgment that dealt with claims for anesthesia modifier reimbursement.

It may be that no disputed issues remain to be adjudicated in the district court, other than the contours of the class. The Government apparently consented in the district court to pay all valid unpaid claims for anesthesia modifiers. It may be therefore that defendants have conceded the correctness of the Plaintiffs' position on the merits and adopted it as the position of the agency. We cannot tell. Remand is nonetheless

required by our adjudication of the exhaustion question.

**9.** The government argues that the class certification was too broad in that it included claimants over whom the district court did not have jurisdiction because they had not exhausted their administrative remedies at the time the action was brought. Indeed, the government may be arguing that this was true of the entire class. In view of the fact that circumstances will have changed substantially by the time the case returns to the district court, and that many class members may have exhausted their administra-

*Conclusion*

We find no error in the district court's order of class certification. The portion of the judgment dealing with claims for reimbursement of anesthesia modifiers is vacated. The case is remanded for such further proceedings as may be appropriate.

tive remedies, we think it more prudent not to rule on this issue, but to leave it to the discretion of the district court whether to maintain or modify the scope of the certified class.