113 F.3d 330
 65 USLW 2751, 53 Soc.Sec.Rep.Ser. 368,
Medicare & Medicaid Guide P 44,236
 Jacinta SKUBEL, by parents & next friends Michael & Eva,
Plaintiff-Appellee,
Travis Hardy, By and Through his parents and next friend,
Flora Hardy Brown, in/and on behalf of himself and
all others similarly situated,
Intervenor-Plaintiff-Appellee,
v.
Alfred J. FUOROLI, Assoc. Regional Adm. Health Care, HH, o/, Defendant,
Joyce Thomas, in her official capacity as Commissioner of
the Department of Social Services; Julie Pollard, in her
official capacity as Director of Medical Administrative
Operations of the Connecticut Department of Social Services;
Defendants-Appellants.
 No. 1323, Docket 96-6201.
 United States Court of Appeals,
Second Circuit.
 Argued March 24, 1997.
Decided May 13, 1997.
 
 Carl Levine, law student intern, New Haven, CT (Caroll L. Lucht, The Jerome N. Frank Legal Services Organization, J. Steven Farr, Daniel C. Lewis, Andrea C. Luby, Tamarra D. Matthews, Eve L. Runyon, law student interns, of counsel), for Plaintiffs Appellees.
 Judith A. Merrill, Assistant Attorney General, Hartford, CT (Richard Blumenthal, Attorney General, Richard J. Lynch, Hugh Barber, Assistant Attorneys General, of counsel), for Defendants-Appellants Joyce Thomas and Julie Pollard.
 Before NEWMAN, Chief Judge, MINER and GODBOLD,* Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Defendants-appellants Joyce Thomas and Julie Pollard, in their respective official capacities as Commissioner and Director of Medical Administrative Operations of the Connecticut Department of Social Services ("DSS"), appeal from a judgment entered in the United States District Court for the District of Connecticut (Burns, J.) granting summary judgment in favor of plaintiffs-appellees Jacinta Skubel and Travis Hardy.[1] The district court determined that the United States Department of Health and Human Services ("HHS") regulation limiting Medicaid coverage to home health care services provided at the recipient's place of residence was an unreasonable interpretation of the home health care services provision of the Medicaid statute, 42 U.S.C. § 1396 et seq., and therefore arbitrary and capricious. Accordingly, the district court permanently enjoined DSS and officials of HHS from denying Medicaid funding to members of plaintiffs' class for medically necessary home health nursing services outside their residences.
 
 
 2
 For the reasons that follow, we affirm the judgment of the district court as modified.
 
 BACKGROUND
 
 3
 Plaintiffs are children suffering from severe medical conditions who require nearly constant supervision during their waking hours. Skubel, who lives at home with her parents, was eight years old at the time the action giving rise to this appeal was initiated. She suffers from several serious medical disorders, including lissencephaly (a severe congenital brain malformation), a mixed seizure disorder, and global developmental delay. Due to Skubel's medical condition, she experiences daily seizures, which result in oral secretions that interfere with her breathing.
 
 
 4
 Skubel requires constant supervision and care for the maintenance of her breathing and administration of her medications. As part of Skubel's supervision, her doctor has prescribed a minimum of 76 hours per week of nursing as medically necessary. Of the 76 hours of nursing prescribed, 56 hours are funded by Medicaid under Connecticut's home health services program[2] and the remaining hours are funded under a private employee insurance plan.
 
 
 5
 Hardy is 12 years old and also suffers from a number of medical disorders, including spastic quadriplegia resulting from bronchopulmonary dysplasia, seizure disorder and mental retardation. As a result of breathing difficulties, Hardy requires a tracheostomy tube in his throat. The attention of a nurse is required for a substantial part of the day to suction his airway through the tracheostomy tube. Hardy's doctor has prescribed 40 hours per week of medically necessary home nursing care, all of which is funded by Medicaid through Connecticut's home health services program.
 
 
 6
 Because both children require nearly constant nursing care, they can participate safely in educational and social activities available in the community only if accompanied by a nurse. However, an HHS regulation limits Medicaid funding for home health services to services "provided to a recipient ... [a]t his place of residence."[3] 42 C.F.R. § 440.70(a)(1). Both Skubel and Hardy requested Medicaid funding for nursing care outside of their homes, but these requests were denied as barred by the HHS regulation.
 
 
 7
 During the two-year period preceding the filing of the action giving rise to this appeal, a number of letters were sent to members of the regional staff of the Health Care Financing Administration ("HCFA") of HHS, both by plaintiffs and officials of the Connecticut Department of Income Maintenance ("DIM"), requesting an interpretation of § 440.70(a)(1). On each occasion, the regional administrators responded that the regulation as currently written would not allow Medicaid funding for home health services provided outside of the plaintiffs' residences.
 
 
 8
 Following our decision in Detsel v. Sullivan, 895 F.2d 58 (2d Cir.1990), in which we held invalid a regulation limiting the provision of private duty nursing to a recipient's residence, a series of letters were sent to HCFA to obtain a reinterpretation of the home health care services regulation in light of Detsel. On March 14, 1990, DIM Director of Medical Care Administration Linda Schofield wrote to then-HCFA Regional Administrator defendant Alfred G. Fuoroli seeking clarification of the home health services regulation. On May 4, 1990, Fuoroli wrote: "[S]ince the Detsel case dealt only with the place of service restrictions on private duty nursing services, it did not apply to the long-standing regulation at 42 CFR 440.70." He further explained that HCFA's regional general counsel had informed him "that absent a court order to the contrary," Medicaid-funded home health care services would extend only to services provided in the home. Finally, on May 10, 1990, acting Medicaid Bureau Director Rozann Abato wrote to Andrew S. Golub, a law student intern assisting plaintiffs, that HHS had "no plans to extend the boundaries of the place of service limitations beyond that which is specified in the regulations."
 
 
 9
 After these efforts to seek an interpretation and reevaluation of the HHS regulation, plaintiffs did not pursue any administrative remedies. Instead, on June 4, 1990, Skubel filed a complaint in district court seeking declaratory and injunctive relief against named officials of HHS and DIM.[4] She claimed that HHS's interpretation of § 440.70 violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., the Civil Rights Act of 1877, 42 U.S.C. § 1983, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, and denied equal protection under the Fifth and Fourteenth Amendments. The primary relief Skubel sought was that she receive Medicaid funding for nursing care provided outside her residence.
 
 
 10
 On July 6, 1990, after an evidentiary hearing, the district court entered a preliminary injunction requiring that defendants fund Skubel's nursing services outside her home. On November 5, 1990, Skubel moved to amend her complaint to add class claims and also moved for class certification. On December 21, 1990, while those motions were pending, Hardy moved to intervene. On March 31, 1992, the district court granted the pending motions and certified a class consisting of all Connecticut residents
 
 
 11
 who have been or in the future will be determined to be eligible for home health nursing services as defined at 42 C.F.R. § 440.70(a) and (b)(1) provided pursuant to the federal Medicaid Act, 42 U.S.C. § 1396 et seq., who, pursuant to interpretations of the text of the Medicaid Act or its implementing regulations, have been or will be limited in the receipt of those services to the physical confines of their homes and for whom home health nursing services are medically necessary when they leave their homes to engage in normal life activities.
 
 
 12
 The parties filed motions for summary judgment and, on May 14, 1996, the district court granted summary judgment in favor of plaintiffs on their APA and § 1983 claims. The district court found that (1) plaintiffs were excused from exhausting their administrative remedies because it would have been futile and a waste of judicial resources to require them to pursue rulemaking, and (2) the regulation was an unreasonable interpretation of the Medicaid statute because, inter alia, it did not represent a reasoned decision in light of the medical advances permitting disabled individuals to leave their homes. Judgment was entered on May 17, 1996, and an amended judgment was entered on June 6, 1996. This appeal followed.
 
 DISCUSSION
 
 13
 DSS argues that the district court erred in granting summary judgment in favor of plaintiffs. Specifically, DSS contends: (1) the district court should have dismissed the action for failure to exhaust administrative remedies; and (2) the regulation was a reasonable interpretation of the Medicaid statute.
 
 
 14
 In reviewing a grant of summary judgment, we apply the same standard as the district court and determine de novo whether summary judgment is appropriate. See Taggart v. Time Inc., 924 F.2d 43, 45-46 (2d Cir.1991). Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, we resolve all ambiguities and draw all reasonable inferences against the moving party. See Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir.1996).
 
 I. Exhaustion of Administrative Remedies
 
 15
 Initially, we must determine whether the district court properly excused plaintiffs from exhausting their administrative remedies. As a rule, plaintiffs must exhaust administrative remedies before seeking redress in federal court. See Pavano v. Shalala, 95 F.3d 147, 150 (2d Cir.1996). Where a plaintiff is challenging the validity of a regulation, the rule of exhaustion normally requires that the plaintiff petition the agency for rulemaking. See South Hills Health Sys. v. Bowen, 864 F.2d 1084, 1095 (3d Cir.1988).
 
 
 16
 However, a plaintiff's failure to exhaust administrative remedies can be excused if (1) the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) requiring exhaustion would result in irreparable harm. See Pavano, 95 F.3d at 150. "[C]ourts should be flexible in determining whether exhaustion should be excused," and should look to the exhaustion rule's goals of preserving the separation of powers between the branches of the government and conserving judicial resources. Id. at 151. We will not upset the district court's decision not to require exhaustion absent an abuse of discretion. See Hall v. National Gypsum Co., 105 F.3d 225, 231 (5th Cir.1997); Salus v. GTE Directories Serv. Corp., 104 F.3d 131, 138 (7th Cir.1997).
 
 
 17
 In this case, there is no question that plaintiffs failed to exhaust their administrative remedies because they never petitioned HHS for rulemaking. However, the letters written by Fuoroli and Abato after our decision in Detsel provide strong evidence that it would have been futile to petition HHS for rulemaking. See Brown v. Secretary of HHS, 46 F.3d 102, 114-15 (1st Cir.1995) (futile where it appears that the agency has "taken a firm stand"). In these letters, Fuoroli explained that only a court order would alter the in-home restriction and Abato wrote that "there [are] no plans to amend" the regulation. DSS argues that these statements merely reflected the current regulatory position, but the statements appear to go well beyond mere reiteration of regulatory language and indicate a general unwillingness to consider changing the regulation. Thus, we find that the district court properly exercised its discretion in excusing plaintiffs' failure to exhaust their administrative remedies. See Able v. United States, 88 F.3d 1280, 1289 (2d Cir.1996) (futile where there is "no realistic possibility" that the agency will change its position).
 
 II. The Validity of the In-Home Limitation
 
 18
 We now turn to the substantive question of the validity of § 440.70. Where a party challenges an agency's interpretation of an act of Congress, we employ the two-step analysis enunciated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2780-81, 81 L.Ed.2d 694 (1984).[5] Under Chevron, we determine whether Congress has spoken on the particular issue. If it has, we "must give effect to the unambiguously expressed intent of Congress." Id. at 843, 104 S.Ct. at 2781. If the statute is silent or ambiguous on the issue in dispute, we inquire whether the agency provides a reasonable interpretation of the statute. See id. We must defer to the agency's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." Id. at 844, 104 S.Ct. at 2782; see Arent v. Shalala, 70 F.3d 610, 616 (D.C.Cir.1995).
 
 1. Ambiguity
 
 19
 A statute is unambiguous when, " 'employing traditional tools of statutory construction,' " the court can find the proper interpretation of the relevant provision. INS v. Cardoza-Fonseca, 480 U.S. 421, 448, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987) (quoting Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9). In interpreting a statute, we begin with the text of the statute and apply the "ordinary, contemporary, common meaning" of the words used. United States v. Kinzler, 55 F.3d 70, 72 (2d Cir.1995) (quotations omitted). We are bound by the plain and unambiguous meaning of the statute, see United States v. Cohen, 99 F.3d 69, 71 (2d Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997), unless that meaning is contrary to clearly expressed legislative intent, see O'Connell v. Hove, 22 F.3d 463, 470 (2d Cir.1994).
 
 
 20
 In the instant case, the Medicaid statute neither allows nor prohibits reimbursement for home health care services outside the recipient's residence. The statute merely provides that states may include "home health care services" in their Medicaid programs. 42 U.S.C. § 1396d(a)(7). It does not define home health care services, and, though the statute implies that the services will normally be rendered in the home, neither the context of the provision nor the structure of the statute indicates whether the home is the exclusive locus of the necessary services.
 
 
 21
 DSS contends that the congressional intent to limit home health care services to a recipient's residence is unambiguous in light of the plain meaning of "home", see Black's Law Dictionary 660 (5th ed.1979) ("[o]ne's own dwelling place; the house in which one lives"); Webster's Third New International Dictionary of the English Language Unabridged 1082 (1981) ("one's principal place of residence"). However, it is not at all clear, even assuming the common meaning of "home", that home health care services must be provided exclusively at the recipient's place of residence. We do not read the phrase "home health care services" to possess such an inherent limitation. The phrase could just as well mean services of the type ordinarily provided in the home.
 
 
 22
 DSS further argues that the statute is unambiguous because "home health services" are defined in the Medicare statute as specified services provided "in a place of residence used as such individual's home." 42 U.S.C. § 1395x(m). However, the home health services provisions in the Medicare statute and those in the Medicaid statute are not analogous. Unlike Medicaid recipients, Medicare recipients must be homebound in order to be eligible for home health services. See 42 U.S.C. § 1395f(a)(2)(C). Thus, rather than express a general congressional intent to limit home health services exclusively to the home, the Medicare definition simply reflects the eligibility requirement for those services.
 
 
 23
 Last, DSS contends that permitting home health care services outside the recipient's residence would render superfluous the word "home" as used in the waiver provisions of the Medicaid statute. See, e.g., Butts v. City of New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1408 (2d Cir.1993) ("[I]t is the duty of reviewing courts to give effect to every clause and word of a statute where possible."). Under 42 U.S.C. § 1396n(c) and (d), a state may include within its Medicaid program coverage for "home or community-based services" provided to individuals who are not categorically eligible for Medicaid funding. DSS argues that reading "home" to extend into the community would obviate the distinction between home and community-based services in these provisions. However, an expansive reading of "home health care services" does not moot the "home or community-based services" provision because those programs do not provide the same services.[6] As long as the services provided differ--the programs overlap only with respect to home health aide services--each program will retain its own identity.
 
 
 24
 In light of the foregoing, it seems to us that the Medicaid statute is ambiguous with respect to whether home health care services must be provided exclusively at the recipient's residence.
 
 2. Reasonableness
 
 25
 In light of this ambiguity, we now inquire whether the in-home restriction represents a reasonable construction of the Medicaid statute. An interpretation is reasonable if it " 'reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent.' " Perry v. Dowling, 95 F.3d 231, 236 (2d Cir.1996) (quoting Rust v. Sullivan, 500 U.S. 173, 184, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991)). It is not necessary that we conclude that the agency's interpretation of the statute is the only permissible interpretation, nor that we believe it to be the best interpretation of the statute. See Chevron, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11. However, "[a]dministrative agencies must articulate a logical basis for their decisions, including a rational connection between the facts found and the choices made." Detsel, 895 F.2d at 63 (internal quotation omitted); see also Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) ("the agency must ... articulate a satisfactory explanation for its action").
 
 
 26
 There does not appear to be any rational connection between the regulation and the purpose to be served by the statute governing home nursing services. The restriction ignores the consensus among health care professionals that community access is not only possible but desirable for disabled individuals. As one commentator explained:
 
 
 27
 Community access is a crucial part of the psychological and social well-being of all persons with disabilities, and may have benefits for physical health as well. This point is well documented and undisputed.
 
 
 28
 ....
 
 
 29
 The technology and knowledge now exist to allow many people with disabilities, elderly or not, to venture into the community, where before they would have been considered permanently homebound. Some of these people may require a nurse to accompany them on these community outings. The presence of a nurse allows these people to go into their communities safely with the care they require.
 
 
 30
 (Aff. of Paula Milone-Nuzzo at 2). Based upon the record before us, the assumptions behind restricting home nursing services exclusively to the recipient's place of residence are no less medically obsolete than those we rejected in Detsel. See Detsel, 895 F.2d at 64.
 
 
 31
 Moreover, we find no logical basis to support restricting Medicaid funding to home nursing services provided exclusively at the recipient's place of residence. As became apparent at oral argument, eliminating the in-home restriction will result in no greater cost to the government in administering this Medicaid program. The class certified by the district court excludes "those individuals who not only seek to remove the at-home limitation but also seek more hours of home health nursing services than they would otherwise obtain." Although the district court's judgment did not make explicit this limitation, we now modify the judgment to expressly limit recipients of Medicaid-covered home health nursing services to the number of hours of service to which they would be entitled if the services were provided exclusively at the recipient's place of residence. Thus, DSS will incur no additional cost by providing funding for home nursing services outside the recipient's home.
 
 
 32
 DSS identifies three justifications for the restriction, each of which fails to provide credible support for the regulation. First, DSS contends that the utilization of services will increase absent the in-home limitation because recipients will request additional hours of nursing services. However, as we have determined, recipients of home nursing services may not receive Medicaid funding beyond the amount to which they would be entitled under the in-home restriction. Their requests for additional nursing services therefore would be evaluated in accordance with this determination.
 
 
 33
 DSS further argues that administrative efficiency will be compromised if the in-home limitation is eliminated because it will be difficult to determine whether the nurse is providing medically necessary services or non-necessary social services such as transportation. However, DSS offers no explanation as to why, absent the in-home limitation, it will be more difficult to ensure that reimbursement is made only for medically necessary services, nor does DSS attempt to show the degree to which its efficiency will be compromised. Absent explanation and substantiation, DSS's conclusory assertion does not provide us an adequate basis upon which to hold the regulation reasonable.
 
 
 34
 Last, DSS contends that there will be cost-shifting between Medicare and Medicaid, because Medicare recipients, who may receive funding only for home health care services administered at their residence, will seek funding from Medicaid to receive the same services outside the home. However, such cost-shifting is not possible because individuals who receive home health services under Medicare are not eligible for those services unless they are unable to leave their homes. See 42 U.S.C. § 1395f(a)(2)(C). If these individuals were capable of leaving their homes and going out into the community--the primary assumption of the cost-shifting argument--they could not receive coverage under Medicare for their nursing services. Thus, DSS's cost-shifting concerns are misplaced.
 
 
 35
 As the Supreme Court explained in Bowen v. American Hospital Ass'n, "[a]gency deference has not come so far that we will uphold regulations whenever it is possible to 'conceive a basis' for administrative action." 476 U.S. 610, 626, 106 S.Ct. 2101, 2112, 90 L.Ed.2d 584 (1986). DSS has presented no persuasive rationale to justify the continued adherence to the "obsolete medical assumptions" upon which the in-home limitation is based. Detsel, 895 F.2d at 66. Therefore, absent a logical basis to support the regulation, we must hold that the regulation as written is invalid.
 
 
 36
 We have considered DSS's remaining contentions and find them all to be without merit.CONCLUSION
 
 
 37
 For the foregoing reasons, the judgment of the district court is affirmed but modified to expressly limit recipients of Medicaid-covered home health nursing services to the number of hours of service to which they would be entitled if the services were provided exclusively at the recipient's place of residence.
 
 
 
 *
 The Honorable John C. Godbold of the United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 Both the state and federal defendants timely filed notices of appeal. The United States Department of Health and Human Services subsequently withdrew its appeal
 
 
 [2]
 Under the federal statutory scheme, states have the option to provide unspecified "home health care services," see 42 U.S.C. § 1396d(a)(7); id. § 1396a(a)(10)(A)(ii); see also Little Rock Family Planning Servs., P.A. v. Dalton, 60 F.3d 497, 499 (8th Cir.1995) (mandatory programs are those programs enumerated in 42 U.S.C. § 1396d(a)(1)-(5)), rev'd in part on other grounds, --- U.S. ----, 116 S.Ct. 1063, 134 L.Ed.2d 115 (1996), which Connecticut has chosen to include within its Medicaid program, see Conn.Gen.Stat. § 17b-2(9); Conn. Agencies Regs. § 17-134d-2(7). To include home health care within a state's Medicaid plan, the state must obtain a waiver pursuant to 42 U.S.C. § 1396n(c). See Skandalis v. Rowe, 14 F.3d 173, 176 (2d Cir.1994)
 
 
 [3]
 The regulation specifically excludes from the definition of "place of residence" hospitals, intermediate care facilities (except under circumstances not relevant here), and skilled nursing facilities. See 42 C.F.R. § 440.70(c)
 
 
 [4]
 Since the initiation of this action, DSS has succeeded DIM
 
 
 [5]
 DSS argues that Chevron is inapplicable in this case because plaintiffs did not challenge the regulation itself, but rather HHS's interpretation of the regulation. However, the district court correctly construed plaintiffs' claims to be aimed at the regulation itself. The regulation provides in explicit language that Medicaid-covered home health services must be provided at the recipient's place of residence. See 42 C.F.R. § 440.70(a)(1). Plaintiffs could obtain the relief they seek only if the regulation were held invalid. Otherwise, HHS would be forced to interpret the regulation in a manner contrary to the regulation's plain language, which we generally will not permit it to do. See United States v. Yuzary, 55 F.3d 47, 51 (2d Cir.1995)
 
 
 [6]
 Home health services include nursing services, home health aide services, medical supplies and equipment, and physical or occupational therapy (including speech pathology and audiology services). See 42 C.F.R. § 440.70(b)(1)-(4). Home and community-based services, on the other hand, include case management services, homemaker services, home health aide services, personal care services, adult day health services, habilitation services, respite care services, day treatment, and "[o]ther services requested by the agency and approved by HCFA as cost effective and necessary to avoid institutionalization." 42 C.F.R. § 440.180(b)(1)-(9)