Bernardo A. TORRES, Plaintiff–
Appellant,

v.

Jo Anne B. BARNHART, Commis-
sioner of Social Security, De-
fendant–Appellee.

Docket No. 03–6262.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 1, 2005.

Decided: Aug. 3, 2005.

James L. Bernard, Stroock & Stroock &
Lavan LLP, New York, New York (James
M. Baker, Center for Disability Advocacy
Rights, Inc., New York, New York, on the
brief), for Plaintiff–Appellant.

Susan D. Baird, Assistant United States
Attorney (David N. Kelley, United States
Attorney for the Southern District of New
York, Jeffrey S. Oestericher, Assistant
United States Attorney, on the brief), New
York, New York, for Defendant–Appellee.

Before: JACOBS and CALABRESI,
Circuit Judges, and RAKOFF, District

Judge.*

Judge Jacobs joins the opinion and concurs in a separate opinion.

RAKOFF, District Judge.

In May 2002, the Appeals Council of the Social Security Administration (the "SSA") denied appellant Bernardo Torres' appeal from a denial by an Administrative Law Judge ("ALJ") of Torres' application for disability benefits under the Supplemental Security Income program. Torres had 60 days to challenge this denial by bringing a complaint in the district court, but it was not until October 17, 2002 that Torres, acting *pro se*, did so. In response to the Government's subsequent motion to dismiss Torres complaint for failure to meet the filing deadline, Torres submitted a sworn affidavit averring that he had been misled into believing that an attorney who was representing him before the SSA would be timely filing the complaint and that upon learning he had been misled he promptly filed his *pro se* complaint. Although these allegations, if credited, might well have excused Torres' untimeliness under the doctrine of "equitable tolling," the district court, without holding an evidentiary hearing, granted the Government's motion and dismissed the complaint. This was an abuse of discretion.

Because no evidentiary hearing was held, we construe the facts most favorably to appellant. Torres' native language is Spanish and he speaks English imperfectly. He filed his application for Social Security benefits on June 7, 2000 and received a hearing on August 8, 2001. While waiting for the hearing to begin, Torres was approached by a lawyer, who gave him a business card. On December 21, 2001, the ALJ denied Torres' claim. On January-

ary 2, 2002, Torres, *pro se,* appealed this decision, but on May 10, 2002, the Appeals Council denied the appeal. Notice of the denial was mailed to Torres on May 21, 2002 together with a letter advising Torres that he had 60 days from the date of his receipt of the letter to file suit in the district court. *See* 42 U.S.C. § 405(g).

Torres, still *pro se,* immediately contacted the Pro Se Office of the district court, which sent him the paperwork he needed to file his civil case. Torres received these papers on May 31, 2002, and completed them the same day; but, fearing that he might be making mistakes, he contacted the lawyer, told him that he "needed to file a [social security] case in federal court," and asked the lawyer if the lawyer could assist him. Torres further explained to the lawyer that he had "already gotten the papers from the court house and filled them out." The lawyer agreed to assist Torres and directed Torres to send him the district court papers.

That same day (May 31), the lawyer sent Torres a letter that thanked Torres for "contacting me to assist you with your claim for Social Security disability benefits." He enclosed a "Social Security Appointment of Representative form," an authorization for release of medical records, and a Fee Agreement "which shows how we get paid if we win benefits for you." Although the "Appointment of Representative" form pertained only to representation before the SSA (no such form being required to enter an appearance in federal court), the Fee Agreement expressly provided for payment if the client's claim was granted by the SSA or "if the claim is awarded by the Appeals Council or by a Federal Court, or following an order for

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

remand issued by the Social Security Administration or a Federal Court."

The cover letter from the lawyer instructed Torres to sign and return the appointment, release, and fee forms, which Torres did. The letter further instructed Torres to send the lawyer "a copy of the letter from the Appeals Council and the envelope it came in," as well as the forms Torres had received from the district court. Torres, after checking with the Pro Se Office of the district court and being advised that it was okay to forward to his lawyer the papers he had received from the Pro Se Office, did so. Finally, the lawyer's letter instructed Torres to call the SSA, begin the process of starting a new claim, and then tell the lawyer "when your telephone interview is scheduled." Again, Torres complied. Given all this, Torres now believed that the lawyer was representing him on all fronts and that he need do nothing further.

In early October 2002, the SSA informed Torres that his new claim had been rejected. Torres called the lawyer on October 11 to report this development. During that conversation, Torres asked about the progress of his district court case. The lawyer told Torres, for the first time, that the case had never been filed. His excuse was to claim that his representation of Torres was limited to pursuing the new claim before the SSA.

Torres immediately called the Pro Se Office of the district court and asked if he could still file the lawsuit. He was told he could, but that he would have to send a notarized statement explaining why his complaint was late. Torres immediately filled out a Pro Se complaint and attached a statement justifying his delay as follows:

I, Bernardo A Torres ... [c]ertify and explain that I am filling and sending the following complaint against the commissioner of social security, the late due to

that when I received the letter of the Appeals Council I thought that I needed an attorney in the moment of filling out said complaint, but someone helped me fill it out and told me that I didn't need an attorney during the time of filling it out, and that I could had looked for one in the time of the hearing. I hope that my application would be welcomed and to be excused for the lateness.

The next day, appellant notarized his statement and mailed the package to the court.

Although the papers were received by the court's Pro Se Office on October 17, 2002, the Pro Se Office did not file Torres' complaint with the district court until November 19, more than a month later. Once it was filed, the Government (as it typically does in such cases) sought two substantial delays of its time to move or answer.

In the interim, however, the Pro Se Office forwarded Torres' explanation for the delay to the SSA's Appeals Council, which has authority to grant extensions of the 60–day filing deadline in the district court. It does not appear that Torres was advised of this referral. On April 22, 2003, the Appeals Council, deeming Torres' statement as a request for an extension, denied the extension on the ground that "the Appeals Council did not inform you in its notice dated May 10, 2002, that you would need an attorney to file a complaint in the United States District Court."

Immediately thereafter, on April 28, 2003, the Government moved in the district court to dismiss the complaint for failure to timely file. Counsel was appointed to represent Torres, and he responded on Torres' behalf by asserting that the district court should apply the doctrine of equitable tolling to excuse the tardy filing. Included in the papers was a

sworn affidavit from Torres asserting the foregoing facts. The motion papers also requested that, if the Government contested Torres' factual assertions (as it subsequently did), the Court should hold an evidentiary hearing.

In a Memorandum Opinion and Order dated November 21, 2003, the district court acknowledged that the 60–day filing requirement is subject to equitable tolling, *see Bowen v. City of New York*, 476 U.S. 467, 480, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), and that, given the nature of social security, equitable tolling of the limitations period is "not infrequently appropriate." *See State of New York v. Sullivan*, 906 F.2d 910, 917 (2d Cir.1990). However, equitable tolling requires a showing of both extraordinary circumstances and due diligence. Here, the district court concluded, Torres' mistaken belief that an attorney was representing him did not constitute extraordinary circumstances, especially given his failure to exercise due diligence to make sure the attorney filed the complaint. Accordingly, the district court dismissed the complaint.

■ As the district court noted, the doctrine of equitable tolling permits courts to deem filings timely where a litigant can show that "he has been pursuing his rights diligently" and that "some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, —— U.S. ——, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005). Since the district court recognized the correct legal standard, we review its application of that standard to determine if there has been an abuse of discretion. *Alli–Balogun v. United States*, 281 F.3d 362, 367–68 (2d Cir.2002). Here, we are reluctantly led to the conclusion that the district court's failure to conduct an evidentiary hearing was such an abuse, since Torres' sworn averments of fact, though disputed, meet the legal standards for equitable tolling.

As to diligence, it is hard to imagine a more diligent *pro se* litigant than Torres. He correctly filed his original SSA petition and showed up for his hearing. When his claim was denied by the ALJ, he filed his appeal within days. When his appeal was denied by the Appeals Council, he, again within days, obtained the necessary paperwork for his district court filing, filled it out, and, to make sure he was not making any mistakes, sought an attorney's assistance. When later he learned that the lawyer had not filed his complaint, he immediately contacted the Pro Se Office to find out his options, and within a few days submitted his complaint.

Given Torres' consistent record of diligence in this case over a period of more than two years, it was unreasonable for the district court to conclude, without benefit of an evidentiary hearing, that Torres failed to exercise due diligence simply because he failed to ask the lawyer to confirm that the complaint had been timely filed. In his cover letter to Torres, the lawyer had specifically asked Torres to send him, not only the district court complaint forms that Torres had already filled out, but also the denial of Torres' claim by the Appeals Council "and the envelope it came in." The only logical reason for this last request was to see the date on which the denial was mailed, so as to determine the 60–day period, which begins running on the date the Appeals Council's denial is received by the applicant. *See* 20 C.F.R. § 422.210(c). Accordingly, Torres had every reason to believe that the lawyer was sensitive to the timing issue and would timely file the complaint. *See Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir.2003) ("The standard is not 'extreme diligence' or 'exceptional diligence,' it is *reasonable* diligence").

Indeed, it was the manner in which the lawyer misled Torres, even if unintention-

ally, that constitutes the "extraordinary circumstances" that render this case appropriate for equitable tolling. When he first called the lawyer, Torres (contrary to the district court's suggestion) specifically stated that he needed help in filing a case in federal court. The lawyer orally stated he would help and then, both orally and in writing, requested that Torres send him the documents he would need to file the complaint, including the Appeals Council denial of the claim, the envelope it came in, and Torres' filled out draft of the federal complaint. Moreover, his fee letter, which he also instructed Torres to sign and return, expressly referred to representation in federal court as well as before the SSA.

■ As the district court noted, the failure of a retained attorney to timely file a federal social security complaint does not necessarily constitute an "extraordinary circumstance" warranting equitable tolling, *see Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir.2001) (per curiam). But this pales in comparison to a case where, as here, a litigant, on the verge of timely filing his own *pro se* complaint, reasonably believes that an attorney, fully cognizant of the time constraints, has agreed to assist him in filing, only to learn later that the attorney has done nothing at all. *See Baldayaque*, 338 F.3d at 152 (finding "extraordinary circumstances" where "[i]n spite of being specifically directed by his client's representatives to file a '2255,' [the attorney] failed to file such a petition at all" and instead pursued a different litigation initiative).

What the district court failed to appreciate is that, if Torres' averments are credited, he presents the case of a legally-ignorant, linguistically-challenged *pro se* claimant who nonetheless did everything possible to try to assert his claim in timely fashion and was only stymied from so doing by being seriously misled by an attorney in whom he placed his trust. This states at least enough to warrant an evidentiary hearing into whether equitable tolling should be invoked.

Accordingly, the district court's dismissal of Torres' complaint for failure to file in timely fashion is vacated, and the case is remanded for further proceedings consistent with this opinion.

JACOBS, Circuit Judge, concurring.

I concur in the Court's opinion. In particular, I agree that—on the current record—Bernardo A. Torres may have been diligent to the limit of his capacities in pursuing timely relief from the denial of his claim for Supplemental Security Income benefits; that he may have been misled into believing that a federal action was timely commenced by his lawyer; that this (and related) circumstances may be sufficiently extraordinary to support application of the doctrine of equitable tolling; that in *this* Circuit (though not elsewhere) equitable tolling seems to be available regardless of whether the agency's time extension procedures are in any way defective; and that a hearing is required to sort out those issues. (It is possible to misover estimate Torres' diligence, but there is enough in the record to justify a hearing.)

I write separately, however, because my concurrence is constrained by precedent of this Court that I think is erroneous and that is on the short end of a circuit split. Moreover, this Court's willingness to extend equitable tolling doctrine in the Social Security context may have the unfortunate effect of encouraging claimants to pursue relief in federal court—under the rigorous standard of equitable tolling—while forgoing application for relief from the agency, which may be granted on terms that are far more indulgent.

## I

The Commissioner of Social Security has power to extend the 60–day limitations period for a civil action challenging a final order of the Commissioner:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced *within sixty days* after the mailing to him of notice of such decision or *within such further time as the Commissioner of Social Security may allow.*

42 U.S.C. § 405(g) (emphasis added). By regulation, the Commissioner will grant such an extension upon a showing no more onerous than "good cause." *See* 20 C.F.R. § 416.1482 ("If you show that you had good cause for missing the deadline, the time period will be extended."); 20 C.F.R. § 416.1411(b) ("good cause may exist," *inter alia,* where the claimant or an immediate family member was seriously ill or the claimant was unable to find necessary information).

The Supreme Court held in *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), that the § 405(g) limitations period can also be equitably tolled by a federal court—but only on a condition:

While in most cases the [Commissioner] will make the determination whether it is proper to extend the period within which review must be sought, cases may arise *where the equities in favor of tolling the limitations period are so great that deference to the agency's judgment is inappropriate . . . .* [W]e conclude that application of a traditional equitable tolling principle to the 60–day requirement of § 405(g) is fully consistent with the overall congressional purpose and is nowhere eschewed by Congress.

*Id.* at 480, 106 S.Ct. 2022 (internal quotations omitted) (emphasis added); *see also id.* at 481, 106 S.Ct. 2022 ("Tolling, in the rare case such as this . . . serves the purpose of the Act where . . . the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights.") (internal quotation marks omitted); *Dixon v. Shalala,* 54 F.3d 1019, 1027 (2d Cir.1995) (*Bowen* "held that the 60–day requirement may be waived in a rare case, according to the traditional principle of equitable tolling, where the equities in favor of tolling the limitations period are so great that deference to the agency's judgment is inappropriate") (internal quotation marks omitted).

With one exception, every case in this Circuit that has applied *Bowen*'s equitable tolling doctrine is one in which a defect in the administrative process inhibits the claimant's ability to utilize the agency's (lenient) time extension procedure. *See Pavano v. Shalala,* 95 F.3d 147, 152 (2d Cir.1996) (noting that *Bowen* and *Dixon* involved, *inter alia,* "evidence of (1) systematic misapplication of the law," and "(2) concealment which prevented beneficiaries from knowing of a violation of rights"); *Dixon,* 54 F.3d at 1032–33 (affirming district court's equitable tolling where Social Security Administration systematically applied its regulations in a manner hidden from plaintiffs); *State of New York v. Sullivan,* 906 F.2d 910, 917 (2d Cir.1990) ("[E]quitable tolling is in order when government misconduct keeps plaintiffs from appreciating the scope of their rights."); *cf. Wong v. Bowen,* 854 F.2d 630, 631 (2d Cir.1988) (*per curiam* ) ("Allowing disability claimants who have been denied benefits to toll the sixty-day period on grounds of poor health would thoroughly undermine Section [4]05(g)'s sixty-day limitation period.").

In other circuits, the § 405(g) limitations period has been tolled *only* in cases of some administrative malfunction that hinders a claimant's ability to pursue his rights. *See, e.g., Bess v. Barnhart,* 337 F.3d 988, 990 (8th Cir.2003) ("[E]quitable tolling has been allowed only in cases where government has hindered claimant's attempts to exercise rights by acting in a misleading or clandestine way.") (*per curiam* ) (in parenthetical citing to *Turner v. Bowen,* 862 F.2d 708, 710 (8th Cir.1988) (*per curiam* )); *Day v. Shalala,* 23 F.3d 1052, 1058 (6th Cir.1994) ("Because this case involves no secretive or clandestine policy, we will not invoke equitable tolling."); *Johnson v. Shalala,* 2 F.3d 918, 923 (9th Cir.1993) ("This is not a case in which the Secretary's failure to publish the policy in the CFR had the same practical effect on claimants as a secret policy. The district court, therefore, abused its discretion in tolling the sixty-day statute of limitations.") (internal citation and quotation marks omitted); *Barrs v. Sullivan,* 906 F.2d 120, 122 (5th Cir.1990) (where Social Security claimant, *inter alia,* "alleged no impropriety on the part of the Secretary" he could "not establish[ ] that his case falls within the narrow class of cases in which the equities in favor of tolling the limitations period are so great that deference to the agency's determination is inappropriate"); *Bailey v. Sullivan,* 885 F.2d 52, 64 (3d Cir.1989) ("[E]quitable tolling [is] not appropriate unless the government's clandestine actions have kept plaintiffs from appreciating the scope of their rights.").

Thus equitable tolling in federal court is limited (in five circuits) to instances where the agency procedures are defective, or defectively implemented. That limitation is justified. Where the ground for equitable tolling is other than an allegation of clandestine or misleading agency conduct, there is no basis for supplementing the lenient recourse afforded by Congress.[1]

Nevertheless, Second Circuit law took an odd turn in *Canales v. Sullivan,* 936 F.2d 755 (2d Cir.1991). The Court in *Canales* "agree[d]" with the district court that "equitable tolling thus far has been allowed only in those cases where the government has hindered a claimant's attempts to exercise her rights by acting in a misleading or clandestine way," but concluded nevertheless that "this court has rejected the position that equitable tolling is permissible only in misconduct cases." *Id.* at 758 (internal quotation omitted). *Canales* was relying on *State of New York v. Sullivan,* which (consistent with *Bowen* ) observed that "[w]hile the decision whether to extend the period of review is usually left to the [Commissioner], cases occasionally arise where the equities in favor of tolling are 'so great that deference to the agency's judgment is inappropriate.' " 906 F.2d at 917 (quoting *Mathews,* 424 U.S. at 330, 96 S.Ct. 893). In a passage seemingly at odds with that formulation, however, the Court also observed (in dicta) that such equitable tolling "is not infrequently appropriate." *State of New York v. Sullivan,* 906 F.2d at 917. Yet this dicta does not support the new rule that is crafted in *Canales,* especially in light of the fact that *State of New York v. Sullivan* was an agency misconduct case.

The rule announced in *Canales*—that equitable tolling is available other than to

---

**1.** Moreover, the phrasing of *Bowen*—affording relief where "deference to the agency's judgment is inappropriate"—is quoted from *Mathews v. Eldridge,* 424 U.S. 319, 330, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Mathews* used that language to describe the standard for excuse of the administrative exhaustion requirement. That doctrine unquestionably requires some defect in the administrative process. *See generally Pavano v. Shalala,* 95 F.3d 147, 150 (2d Cir.1996).

compensate for the agency's misleading or clandestine actions—is incompatible with what has been done or said in every other Second Circuit case, and splits with every other circuit. I unhappily conclude that *Canales* was based on flawed reasoning.

Congress has empowered the Commissioner to extend the § 405(g) limitations period. *See* 42 U.S.C. § 405(g) (appeal of Commissioner's final decision must be filed within 60 days or "such further time as the Commissioner of Social Security may allow"). Under Supreme Court precedent, that determination is left to the Commissioner in "most cases," and traditional equitable tolling principles come into play *only* if a federal court determines "that deference to the agency's judgment is inappropriate." *Bowen*, 476 U.S. at 480, 106 S.Ct. 2022. In short, we lack jurisdiction to review the Commissioner's denial of an extension, 20 C.F.R. § 416.1403(a)(8), and we owe deference to the agency's judgment absent agency misconduct or a procedural or structural malfunction.

## II

As the opinion of the Court recognizes, the standard for equitable tolling of Torres' claim in this Court is a tough one. "This Circuit, like her sisters, has found attorney error inadequate to create the 'extraordinary' circumstances equitable tolling requires." *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir.2001) (*per curiam*) (citing *Sandvik v. United States*, 177 F.3d 1269, 1270 (11th Cir.1999) ("mere attorney negligence . . . is not a basis for equitable tolling")). A narrow exception to that rule is created in *Baldayaque v. United States*, which holds that while "attorney error *normally* will not constitute the extraordinary circumstances required to toll [a] limitations period . . . at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraor-

dinary." 338 F.3d 145, 152 (2d Cir.2003). "Normal errors made by attorneys"—whatever those are—do not suffice; only "extreme situations" will do. *Id.; see also id.* at 154 (Jacobs, J., concurring) (observing that, in *Baldayaque*, the client should not be taxed with the lawyer's lack of diligence, because there was no actual agency: the lawyer "took a $ 5,000 retainer without undertaking the requested service; set aside his client's interests in favor of his own; and undertook a futile, unresearched, and frivolous initiative for the sole purpose of keeping the fee").

As noted above, the Commissioner of Social Security is not constrained by the tough standard of equitable tolling, and has the power and discretion to extend the § 405(g) 60–day limitations period on a lesser showing of "good cause." 20 C.F.R. §§ 416.1482, 416.1411. The Commissioner has adopted "good cause" regulations that expressly afford redress for claimants upon a minimal showing of hardship, including the very situation that Torres alleges. *See* 20 C.F.R. § 416.1411(a) (in determining whether good cause exists, the agency considers "any lack of facility with the English language"); 20 C.F.R. § 416.1411(b) ("good cause may exist" in the case of "unavoidable circumstances . . . which prevented you from filing timely"); *see also* Social Security Administration, Program Operations Manual System, GN 03101.020(A)(4)(j) ("good cause may exist" where "the claimant thought his/her representative had filed the appeal"), *available at* http://policy.ssa.gov/poms.nsf/aboutpoms. .

There is a risk that this Circuit's (so far) unique policy will induce some appreciable number of claimants with colorable excuses for lateness to seek relief from default in the district court (and here) rather than in the agency. That would be a trap, because all such claimants (including Tor-

res) have always been free to seek an extension of time to file from the Appeals Council on a showing of no more than "good cause." The erroneous rule developed in this Circuit, which is now faithfully applied in the opinion of the Court (and by me), seems claimant-friendly; but it puts claimants at a disadvantage if they (like Torres) sweat to achieve equitable tolling in federal court rather than push on the agency's open door.