**John R. DETTELIS, Plaintiff,**

v.

**The CITY OF BUFFALO and James Groebe, Individually and in his capacity as an Investigator for the New York State Department of Environmental Conservation (Region 9), Defendants.**

**No. 95–CV–529C.**

United States District Court,
W.D. New York.

March 28, 1998.

---

342

David J. Seeger, Buffalo, New York, for plaintiff.

Michael B. Risman, Corporation Counsel for the City of Buffalo (Susan P. Wheatley, Assistant Corporation Counsel, of counsel), Buffalo, New York, for defendant City of Buffalo.

Dennis C. Vacco, Attorney General of the State of New York (Paul F. McCarthy, Assistant Attorney General, of counsel), Buffalo, New York, for defendant James Groebe.

## DECISION and ORDER

CURTIN, District Judge.

### INTRODUCTION

On May 20, 1997, the court met with the parties, and plaintiff was given permission to amend his complaint (Item 29). Thereafter, plaintiff filed his amended complaint (Item 31), defendant City of Buffalo ("City") filed its amended answer (Item 32), and defendant James Groebe ("Groebe") filed his amended answer (Item 35). On August 13, 1997, the parties stipulated to dismiss with prejudice defendant State of New York (Item 37).

Before the court is defendant Groebe's renewed motion for summary judgment (Item 36, renewing Items 17–18) and defendant City's motion for summary judgment (Item 38). In opposition, plaintiff filed a reply affidavit and numerous exhibits (Item 40), as well as a memorandum of law (Item 48). The City filed a reply affidavit and memorandum of law (Item 44), and Groebe filed a reply memorandum of law (Item 49).

On January 16, 1998, the parties appeared for oral argument. When the court asked plaintiff's counsel whether or not he had intentionally or inadvertently dropped the City of Buffalo police officers who searched plaintiff from his amended complaint (Item 31), he replied that he intended to drop them.

After oral argument, plaintiff submitted a post-argument memorandum of law (Item 51), and the City responded with a letter in response (Item 52).

### BACKGROUND

Plaintiff John Dettelis brings this action against defendants for violations of his constitutional rights under 42 U.S.C. § 1983 and for malicious prosecution against defendant Groebe (Item 31). Specifically, plaintiff contends that on July 21, 1994,[1] defendant Groebe wrongfully arrested him, and defendants Groebe and the City wrongfully conducted a strip-search and a body-cavity search without probable cause, in violation of his constitutional rights. (*Id*). Plaintiff is seeking $10 million in damages, as well as costs and attorney's fees, as provided by 42 U.S.C. § 1988.

Groebe is an investigator for the New York State Department of Environmental Conservation. In early 1994, he was conducting an investigation into illegal dumping, open burning, and other violations of New York Environmental Conservation Law in the City of Buffalo. In the course of his investigation, Groebe interviewed plaintiff to determine whether plaintiff had illegally possessed and disposed of hazardous wastes at certain sites on Hertel Avenue.

On July 5, 1994, Groebe filed a misdemeanor complaint in Buffalo City Court against plaintiff charging him with five separate violations of New York State Environmental Conservation Law and Penal Law for his actions between November 11 and November 18, 1993 (Item 17, Exh. D). On July 12, 1994, Buffalo City Court Judge Shirley Troutman issued a warrant for plaintiff's arrest based on the misdemeanor complaint (*Id.*, Exh. B, C). In applying for the warrant, Groebe submitted seven affidavits from individuals with personal knowledge as to Dettelis's actions in addition to the misdemeanor complaint (Item 49, Exh. C1–C7).

On July 21, 1994, plaintiff voluntarily went to Groebe's office to discuss his involvement in illegal dumping of hazardous waste at certain Hertel Avenue sites (Item 31, ¶ 17). Plaintiff was implicated in this investigation because during his employment with an estate liquidation business a small fire started

---

1. In his amended complaint (Item 31), plaintiff alleges different dates for when he was arrested—July 17, 1994 (Item 31, ¶ 48), July 21, 1994 (Item 31, ¶¶ 4–5), July 27, 1994 (Item 31, ¶¶ 17, 21, 34). Based on plaintiff's arrest records, the court presumes that the correct date was July 21, 1994 (Item 17, Exh. A).

in a barrel in the backyard of a house where he was working. Plaintiff claims that he was inside the house when the fire started and that once he learned of the fire he tried to dowse it with a garden hose. By the time the fire department arrived, the fire had been squelched. Among other things, defendant Groebe was investigating the possible connection of certain chemicals to this fire (*Id.* at 17–18).

The events that give rise to this controversy occurred after Groebe arrested plaintiff on July 21, 1994. After plaintiff was brought to the Buffalo Police Department ("BPD") Central Booking Unit, plaintiff was escorted upstairs to the cellblock. After waiting in a hallway for a short while, he was brought into a room where two police officers were waiting. Groebe accompanied plaintiff because BPD Policy requires that the arresting officer be present while the arrestee is searched. According to plaintiff, one of the two officers, Anthony Sisi, told plaintiff to strip naked. Plaintiff alleges that he was then instructed to squat and cough, and that the officers pinned plaintiff to the wall and a full body-cavity search occurred (Item 31, ¶¶ 23–25).

In contrast, Officer Sisi testified that he did not conduct a strip-search nor a body-cavity search (Item 40, Exh. D, at 27–29).[2] He stated that he asked Dettelis to strip down to his underwear, and that after patting him down, he determined that there was no need for a strip-search (*Id.* at 27). Furthermore, when plaintiff deposed the other three police officers on duty that day (Mulderig, Rosensie, and Redmond), none recalled the booking or search of plaintiff (Item 40, Exh. J; Item 38, Exh. I).

Plaintiff contends that before, during, and after the search, Groebe and the two officers laughed at plaintiff and subjected him to derision, humiliation, ridicule, and embarrassment (Item 31, ¶ 25). At his deposition, plaintiff claimed that during the search, Groebe told him "take it like a man; it'll go quick and easy." (Item 17, Exh. I, at 7, 10). In contrast, Groebe denies saying this and

states that during the search he turned his head and looked at the wall after the officer said "drop your pants and lean against the wall." (Item 17, Exh. J, at 130). Groebe then left BPD Central Booking after the search was over.

Plaintiff asserts that it is unconstitutional to conduct strip- and/or body-cavity searches of arrestees charged with misdemeanor violations when there is no reasonable suspicion that weapons or other contraband will be found (Item 31, ¶ 27). He contends that other misdemeanor arrestees were subjected to illegal strip- and body-cavity searches. He alleges that the City failed to investigate these illegal searches and that they had become customary, in violation of written policy. Plaintiff maintains that this customary policy resulted in deliberate indifference to the right of detainees to be free from unreasonable searches (*Id.*, ¶ 36). He asserts that, as a result of defendants' acts and/or omissions, he has suffered severe emotional distress, anxiety and depression. He has become emotionally and socially withdrawn, suffered appetite loss, and has suffered sleep disorders.

After the events described above, processing was completed, and plaintiff was placed in a cell for a few hours before appearing in City Court on the charges. At his appearance, the court appointed an attorney, set a date for a further hearing, and released plaintiff on his own recognizance (Item 22, 9/13/97 deposition at 79–80).

On October 18, 1994, plaintiff pleaded guilty before City Court Judge Margaret Murphy to violating Environmental Conservation Law § 71–4001 and 6 New York Code Rules and Regulations ("NYCRR") § 360–1.5. Judge Murphy fined plaintiff $50 in satisfaction of the charges against him.

Plaintiff argues that he only pleaded guilty to illegally burning trash in a barrel at 1955 Hertel Avenue, and that this count is wholly distinguishable from the counts that he had illegally disposed of pesticides at 525 Hertel Avenue, all of which were dismissed when he

---

**2.** Notably, Officer Sisi testified at his deposition that he has *never* performed a body-cavity search on any prisoner (Item 40, Exh. D, at 28).

entered his guilty plea (Item 31, ¶¶ 40–45). Plaintiff also argues that defendant had no probable cause to arrest him for the charges that were dismissed when he entered his guilty plea and that Groebe is guilty of malicious prosecution (*Id.*, ¶ 49).

In contrast, Groebe argues that he had probable cause for the arrest as evidenced by the warrant based on a misdemeanor complaint and seven affidavits from people with personal knowledge of what occurred. Groebe argues that since plaintiff was convicted of one of the underlying charges, he is precluded from bringing this claim for malicious prosecution.

## DISCUSSION

Before the court are defendant City's motion for summary judgment (Item 38) and defendant Groebe's renewed motion for summary judgment (Item 36, renewing Items 17–18). The City argues that even assuming plaintiff's claims to be true, municipal liability cannot be imposed under 42 U.S.C. § 1983 because there is no proof that it is the custom or policy of the BPD to routinely subject arrestees to unconstitutional strip- or body-cavity searches (Item 38, ¶ 11; Item 44). Groebe argues that he was not responsible for the strip-or body-cavity search of plaintiff because he had relinquished custody of plaintiff to the BPD. He also argues that he had probable cause to arrest plaintiff and plaintiff's conviction bars his malicious prosecution claim.

### I. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the court is required to view any permissible inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir.1997). Furthermore, the movant seeking summary judgment has the initial burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R.Civ.P. 56(c).

However, once that burden has been met, the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. Unlawful Strip and Body Search

It is well established that:

the Fourth Amendment precludes prison officials from performing strip/body cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.

*Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). Plaintiff and defendants agree that *Weber* applies to the case at bar and that both a strip-search and a body-cavity search were not warranted since plaintiff was arrested for a misdemeanor, and there was not reasonable suspicion that plaintiff was concealing weapons and/or contraband. Thus, for purposes of this motion, the court will accept as true plaintiff's allegations that he was subjected to an unlawful strip-search and unlawful body-cavity search.

#### A. Defendant City of Buffalo

Both plaintiff and defendant City agree that *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) controls here. In *Brown*, the Supreme Court recounted its decision in *Monell v.*

*Dept. of Social Servs. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny concerning whether a municipality can be held liable under 42 U.S.C. § 1983. The Court stated that "in enacting § 1983, Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Brown,* 520 U.S. at ——, 117 S.Ct. at 1386 (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). The Court reiterated that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Brown,* 520 U.S. at ——, 117 S.Ct. at 1388. Rather, the Court explained that "in *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Here, while both parties agree that *Brown* is controlling, they disagree as to whether plaintiff's injuries were caused by a "policy" or "custom" of defendant City. Plaintiff acknowledges that defendant City's written policy is in accordance with *Weber,* but argues that its written policy was ignored and a *de facto* policy existed in which individuals were routinely subjected to strip- and/or body-cavity searches without justification. Plaintiff contends that he has presented evidence of five incidents over six years where the City allegedly conducted unconstitutional strip- and body-cavity searches of arrestees and detainees (Item 40). Based on these incidents, plaintiff argues that the strip-search and body-cavity search that he was subjected to were not random in nature, but rather a "policy" or "custom" within the meaning of *Brown* and *Monell.*

The first incident that plaintiff alleges occurred on September 11, 1988, when Kyle Jackson claimed that he was unlawfully kicked, punched, and left to spend the night naked in the police lockup after he was arrested on disorderly conduct charges (Item 40, Exh. F, *Buffalo News* Article 10/15/88). The City argues that this incident is not relevant because while the changes in City policy on searches were stated in memorandums dated September 6 and 7, 1988, these changes were not implemented until October 7, 1988, after the Jackson incident.

The second incident occurred on September 21, 1988, when Kenneth Lynch claimed that he was unlawfully arrested and strip-searched for a misdemeanor offense after he had asked two officers for their badge numbers when they refused to take action about a car that was illegally parked (Item 40, Exh. F). Lynch filed a lawsuit in New York State Supreme Court on September 20, 1989, which eventually settled (Item 38, Exh. H). Like the Jackson incident above, the City argues that the Lynch incident is not relevant because it occurred before October 7, 1988.

The third incident occurred on November 20, 1993, when Berlinda Brundidge was arrested for a felony and claimed that she was unlawfully strip-searched in front of her family members and friends. Brundidge filed a lawsuit on February 15, 1995, in the United States District Court for the Western District of New York, *Brundidge v. City of Buffalo, et al.,* 95–CV–109. This case is still pending. The City argues that this incident is not relevant, and *Weber* does not apply because Brundidge was arrested for sale of a controlled substance which is a felony, not a misdemeanor, and drugs were found on her person.

The fourth incident occurred on July 21, 1994, the same day as plaintiff's arrest, when plaintiff claims that the "black gentleman" at BPD Central Booking before him was subjected to a strip-search and body-cavity search. Plaintiff states that Officer Sisi performed this search and that plaintiff asked him to change his gloves before he searched plaintiff. Defendant City contends that their records show that this person was "most probably" James Beckham, who was arrested for an assault committed with a deadly weapon or dangerous instrument (Item 44, ¶ 8). Once again, the City argues that it was constitutionally justified in strip-searching Mr.

Beckham because his arrest was based on a felony, distinguishable from plaintiff's misdemeanor arrest. Notably, at his deposition, Officer Sisi stated that he did not remember the race of the person searched before plaintiff, nor does he remember if he strip-searched him (Item 40, Exh. D, at 31, 33). Defendant Groebe recalled that a "black gentleman" was searched before plaintiff, but states that he turned his head away once the officer told the "black gentleman" to drop his pants (Item 17, Exh. J, at 126). Finally, the City notes that plaintiff's claim that a body-cavity search occurred is the only one that has been made against the City since 1988.

The fifth incident occurred on September 15, 1994, when Gretchen Joy Vinson claimed that her constitutional rights were violated when she was strip-searched without probable cause after she was arrested for failure to pay a $1.10 metro fare. On March 7, 1995, Vinson filed suit in the United States District Court for the Western District of New York, *Vinson v. City of Buffalo, et al.*, 95–CV–156. This case has subsequently settled. The City argues that this incident is not relevant because both the incident and Vinson's initial complaint occurred after the plaintiff's arrest. The City states that Vinson did not claim that a body-cavity search occurred, but only that she was illegally strip-searched.

Based on the arguments above, and viewing the facts in a light most favorable to the plaintiff, the court must decide whether plaintiff has provided enough evidence to defeat the City's motion for summary judgment. Is there enough evidence to permit plaintiff to present his claim at trial that the City had an unconstitutional policy about strip- and body-cavity searches? Assuming that plaintiff was subjected to either a strip- or body-cavity search, the court must determine whether it was random in nature or happened because of a "policy" or "custom" within the meaning of *Brown* and *Monell*.

In ruling on plaintiff's claim the court will first discuss plaintiff's allegations that a body-cavity search occurred and then discuss his allegations that a strip-search occurred.

### 1. Body–Cavity Search

On this question, plaintiff has not shown another incident in which any individual, other than plaintiff and arguably the person searched before him, claimed that an illegal body-cavity search occurred. Notably, Jackson, Lynch, Brundidge, and Vinson did not claim that an illegal body-cavity search occurred. Rather, plaintiff bases his argument on the fact that BPD Policy states if a body-cavity search is required, then it must be conducted at the Erie County Medical Center (ECMC). Plaintiff argues that from 1988 to 1995, there were approximately 170,000 people processed through BPD Central Booking, and there is not evidence that anyone of those people was sent to ECMC for a body-cavity search.

■ The court finds plaintiff's counsel's arguments to be flawed in two important respects. First, for purposes of this motion, even if defendant City did not abide by BPD Policy and did not conduct its body-cavity searches at ECMC, this is not unconstitutional under *Weber*. *Weber* does not apply to where body-cavity searches occur but rather holds that an individual who is arrested for a misdemeanor cannot be subjected to a strip-search unless there is "a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." *Weber*, 804 F.2d at 802.

■ Second, in order for plaintiff to defeat defendant City's summary judgment motion, plaintiff must provide "affirmative evidence" that a strip-search or a body-cavity search unconstitutionally occurred after a misdemeanor arrest. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Plaintiff fails to do this, and simply provides a bare allegation that the City did not follow its policy of having body-cavity searches done at ECMC. Here, the burden is on plaintiff to demonstrate specific instances where a misdemeanor arrestee was unconstitutionally body-cavity-searched in order to demonstrate a "custom" or "policy" under *Brown* and *Monell*.

Given that plaintiff has conducted extensive discovery and provided evidence that

only he and the "black gentleman" at BPD Central Booking before him were illegally body-cavity-searched, plaintiff has not provided enough "affirmative evidence" to establish a "custom" or "policy" under *Brown* and *Monell.* Plaintiff "may not rest upon mere allegation or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R.Civ.P. 56(e)). Therefore, the court grants defendant City's motion for summary judgment as to plaintiff's illegal body-cavity-search claim.

## 2. Strip–Search

On this question, the court finds that while plaintiff has offered claims of five different incidents where unlawful strip-searches occurred, four of these incidents are relevant for the purposes of this motion. The Lynch and Jackson incidents are relevant, despite the City's contention they occurred in September 1988 before the new City policy was implemented on October 7, 1988, because the Second Circuit decided *Weber* on November 6, 1986, and certiorari was denied by the Supreme Court on June 26, 1987, in *County of Monroe v. Weber*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). While the City's police officers may not have known about the *Weber* decision, the City had notice for almost two years before they instituted a new policy. Thus, any unlawful strip-searches which occurred after *Weber* was decided on November 6, 1986 are relevant to this motion.

Also relevant for purposes of this motion are the search of the "black gentleman" at BPD Central Booking ahead of plaintiff. Even though the City argues that a review of the BPD arrest records reveals that this gentleman was "most probably a James Beckham," this fact is not known to an absolute certainty and thus this incident is relevant for purposes of this motion.

Furthermore, the Vinson incident on September 15, 1994, in which Ms. Vinson was improperly strip-searched for failing to pay her metro fare, is also relevant. Even though the City argues that the Vinson incident occurred after plaintiff's arrest, this incident is relevant because it provides evidence that an unlawful strip-search occurred after the Second Circuit decided *Weber.*

However, the Brundidge search is not relevant because it occurred after a felony drug arrest and not after a misdemeanor arrest. The *Weber* standard only applies to misdemeanors. *See Weber*, 804 F.2d at 804.

■ Thus, at most, plaintiff alleges four incidents in addition to his own for a total of five to establish that the unconstitutional strip-search to which he was subjected was not random in nature, but rather a "policy" or "custom" within the meaning of *Brown* and *Monell.* Based on five incidents, the court finds that even if plaintiff was subjected to an unconstitutional strip-search, it was random in nature and not a "policy" or "custom" within the meaning of *Brown* and *Monell.* Given that more than 175,000 arrestees were processed and searched between 1988 and 1995, the occurrence of at most five illegal searches during a seven-year time period fails to constitute a "custom" or "policy" within the meaning of *Brown* or *Monell.*

Therefore, defendant City cannot be held liable as a matter of law as to plaintiff's strip-search claim. Accordingly, the court grants defendant City's motion for summary judgment.

## B. Defendant Groebe

As to Groebe, plaintiff does not allege that Groebe performed an unlawful strip- and body-cavity search on plaintiff. Rather, plaintiff only alleges that Groebe was present when he was unlawfully searched and maintains that Groebe still had custody over him.

While Groebe admits that he was present during plaintiff's search, he notes that he just wanted to drop off plaintiff at the cellblock at BPD Central Booking and leave. Groebe said that he told the officers: "[H]ere's the papers. I'm going to get going." (Item 17, Exh. J, at 129–30). However, as he started to leave one of the officers told him "[W]ait, you have to wait [until] he's done being processed before you leave." *Id.* at 130. Groebe then says that he looked away when the officers asked plaintiff to drop his pants. He says that he did not see whether the officers strip-searched or conducted a body-

cavity search of plaintiff. *Id.* For these reasons, Groebe maintains that plaintiff was not in his custody, but rather that he turned custody over to the City officers after he arrested plaintiff and booked him at BPD Central Booking.

Here, the main issue is whether defendant Groebe can be held individually liable for his mere act of being present when plaintiff allegedly was strip- and body-cavity searched. Notably, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a' prerequisite to an award for damages under § 1983.'" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). "Since personal involvement is a question of fact[,] we are governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendants is (sic) entitled to judgment as a matter of law." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

■ Here, plaintiff does not allege that Groebe actually took part in the alleged strip- and body-cavity search. Plaintiff does not contradict Groebe's contention that he merely stood there, looking at the wall, waiting for the search to be over with. Groebe was present while plaintiff was searched only because BPD Policy requires that at least one arresting officer remain present during the search of the arrestee (Item 40, Exh. D, at 40). Groebe was not the supervisor of the officers at the cellblock, nor was he in a position to tell them what to do about the search. At most, plaintiff's most serious allegation against Groebe is that he laughed at plaintiff while the search occurred.

For these reasons, I find that Groebe did not personally participate in the search, nor did he direct or supervise the search. Therefore, he cannot be held liable as a matter of law under § 1983. Accordingly, the court grants Groebe's motion for summary judgment as to plaintiff's claim that he was unlawfully searched under § 1983.

### III. Plaintiff was arrested without probable cause

■ Plaintiff alleges that Groebe arrested him without probable cause, and therefore his due process was violated. However, Groebe submitted seven affidavits to Judge Troutman in addition to the misdemeanor complaint when he applied to her for a warrant for plaintiff's arrest (*See* Item 49, Exh. C1–C7). Without question, these affidavits demonstrate that the warrant for plaintiff's arrest was properly supported with probable cause. The affidavits also refute plaintiff's argument that "[d]efendant Groebe applied for the search warrant and submitted no affidavit or evidentiary materials to the Magistrate." (Item 48, at 2).

■ Furthermore, Groebe correctly argues that since plaintiff pleaded guilty to one of the counts that he was arrested for, plaintiff is barred from suing civilly for abuse of process and/or false imprisonment. In *Cameron v. Fogarty,* 806 F.2d 380, 388 (2d Cir. 1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987), the Second Circuit held:

> Where the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest.

Here, plaintiff's §1983 action based on an arrest without cause is without merit. *Id.* Therefore, Groebe's motion for summary judgment must be granted as to the §1983 claim for arrest without probable cause.

### IV. Malicious Prosecution Claim

■ It is well established in the Second Circuit that "[i]n an action for malicious prosecution, in which the plaintiff must show the absence of probable cause to arrest, he must also show, *inter alia,* that the proceedings previously commenced against him terminated in his favor." *Id.* at 387 (citations omitted). Given that the proceedings commenced against plaintiff were not terminated in his favor, plaintiff's action for malicious prosecution against Groebe fails.

### CONCLUSION

For the foregoing reasons, this court grants defendant Groebe's renewed motion

for summary judgment and grants defendant City's motion for summary judgment.

Accordingly, the complaint is dismissed and judgment shall enter for the defendants.

So ordered.