201 F.3d 1256 (9th Cir. 2000)
 LEWIS HEIN; COLLEEN DOTSON; SYLVIA DARBY-JODON; ANDREW HEIN; JASON HELMER; FRANK LUNNING, JR.; MARY LUNNING-FEIN; DEBRA PADILLA; PAUL PHIPPS, JR.; CHRISTOPHER PROVINZANO; and HELEN RUST, individually and as representatives of DEFENDANT CAPITAN GRANDE, Plaintiffs-Appellants,
v.
CAPITAN GRANDE BAND OF DIEGUENO MISSION INDIANS, a federally recognized tribe; BARONA GROUP OF THE CAPITAN GRANDE OPINION BAND, an unincorporated association; CLIFFORD LACHAPPA, SR., individually and as Chairman of the Barona Group; JOHN and JANE DOES 1-15, members of the Tribal Council of the Barona Group; VIEJAS GROUP OF THE CAPITAN GRANDE BAND, an unincorporated association; ANTHONY PICO, individually and as chairman of the Viejas Group;JOHN and JANE ROES 1-15, members of the Tribal Council of the Viejas Group; UNITED STATES OF AMERICA; BRUCE BABBITT, in his capacity as Secretary of the Interior, Defendants-Appellees.
 No. 98-56182
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 8, 1999
Filed February 7, 2000
 
 COUNSEL: Joe B. Cordileone, Law Offices of Joe B. Cordileone, San Diego, California, for the plaintiffs-appellants.
 Art Bunce, Law Offices of Art Bunce, Escondido, California, for the defendants-appellees.
 Appeal from the United States District Court for the Southern District of California,
 Before: Thomas M. Reavley,[1] Stephen Reinhardt, and M. Margaret McKeown, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Plaintiffs Hein and other members of the Splinter Group of the Capitan Grande Band of Diegueno Mission Indians (hereinafter "plaintiffs") appeal from the district court's decision granting defendant the Barona Group's motion to dismiss on the basis of lack of subject matter jurisdiction and tribal sovereign immunity. We agree with the district court that it lacked subject matter jurisdiction over plaintiffs' claims brought directly under the Indian Civil Rights Act (ICRA) and the Indian Gaming Regulatory Act ( IGRA), and, therefore, we affirm its dismissal of those counts. In light of this holding, we need not consider its ruling on tribal sovereign immunity to resolve the remainder of the action. We reverse the district court's decision dismissing plaintiffs' remaining claims on appeal; those claims are brought only against the United States and the Secretary of the Interior, and the Barona Group is not, pursuant to Rule 19, an indispensable party with respect to these causes of action. In particular, plaintiffs have asked the district court to compel the Secretary of Interior to issue a ruling with respect to their tribal status and, relatedly, their rights to a share of the proceeds of the Barona Group's gaming operations. That cause of action, as well as the cause of action against the Secretary and the United States for breach of trust, remains properly before the district court.
 
 I.
 
 2
 The history of this dispute is complex. The facts necessary to an understanding of our decision may, however, be summarized briefly. The Capitan Grande Band of Diegueno Mission Indians, an Indian tribe, resided on its reservation until approximately 1932. At that time, a substantial portion of its land was sold to the city of San Diego. Money from the sale was given to tribe members pursuant to an agreement under which their rights as tribe members were to remain unaffected by the arrangement. Tribe members used the money in three different ways. Some (the Barona Group) banded together and purchased land on what is now the Barona reservation. Others (the Viejas Group) bought land on what is now the Viejas reservation. A third group, the "Splinter Group, " purchased individual tracts of land in various parts of Southern California. Members of that group and their descendants are the plaintiffs in this case.
 
 
 3
 In 1994, the Barona Group sought and received approval to conduct class III gaming from the National Indian Gaming Commission. Thereafter, the Splinter Group applied to the Department of the Interior for recognition as a tribe. The Barona Group, as an interested party, argued in response that the Splinter Group should not be accorded the status of a federally recognized Indian tribe.[2] Ultimately, in a letter to the Splinter Group the Department determined that none of the three groups is a separate tribe. Instead, it found that all three are part of the Capitan Grande Band, which is the only tribe "with whom [sic] we recognize a government-to-government relationship." Specifically, the letter stated that "the Department does not extend federal recognition to Viejas and Barona separate fromthe Capitan Grande Band of Diegueno Mission Indians of California. Although the Department has worked with the separate reservation based groups because of the separate land bases, this relationship does not constitute separate `recognition.' " However, the Department's letter also stated that the Barona and Viejas groups were the "successors in interest" to the Capitan Grande Band.
 
 
 4
 Subsequently, the Splinter Group petitioned the Bureau of Indian Affairs (BIA) requesting that its members be given their share of the proceeds from the Barona Group's gaming operations. The BIA denied the petition, asserting that it had no trust responsibility over gaming revenue allocations, but advised the Splinter Group of its right to appeal the decision to the Secretary of the Interior.[3] Under the rulings it had received up to that time, the Splinter Group was in a quandary: it could not conduct gambling on its own, because the Department of Interior had determined that it was not a separate tribe, but it could not share in the proceeds of the Barona Group's gaming operations because no allocations had been made to the Splinter Group members, and the BIA asserted that it had no jurisdiction to act upon the Splinter Group's petition. In response, the Splinter Group appealed the BIA's decision to the Secretary of Interior on September 3, 1997. The district court found, and the Splinter Group plaintiffs now assert, that the appeal to the Secretary is still pending.
 
 
 5
 After the BIA's ruling, the Splinter Group plaintiffs filed suit in federal district court, again asserting their rights to a portion of the Barona Group's gaming revenues. The district court held that the Splinter Group plaintiffs had no cause of action in the district court and that they should seek redress from the Indian Gaming Commission, because the Commission is responsible for the approval of gaming ordinances. During the pendency of this appeal, plaintiffs followed the district court's advice and requested the Commission to review the Barona Group's revenue allocation plan. After some time, the Commission denied the request, ruling that the Secretary of Interior, not the Commission, has the responsibility for approving revenue allocation plans.[4] Obviously, this ruling cannot be reconciled with either the BIA's or the district court's rulings, both of which state that the Secretary is not the governmental entity with jurisdiction over the Splinter Group plaintiffs' claims.
 
 II.
 
 6
 Plaintiffs first argue that the Indian Civil Rights Act (ICRA) provides a cause of action for their claims. However, the Supreme Court has held that the only remedy available from the federal courtsunder ICRA is a writ of habeas corpus under 25 U.S.C. S 1303. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 69-72 (1978). Plaintiffs do not seek such a writ.[5] Thus, ICRA provides no cause of action for plaintiffs' claims.[6]
 
 III.
 
 7
 Plaintiffs next argue that they may bring a direct action under IGRA because that statute authorizes private suits to enforce its provisions. However, where IGRA creates a private cause of action, it does so explicitly. For example, it specifically provides for suit by an Indian tribe to compel action by the Commission to approve or disapprove management contracts, 25 U.S.C. S 2711(d), and also explicitly allows for tribes to sue states under some circumstances. 25 U.S.C. S 2710(d).[7] The existence of such explicit provisions authorizing suits persuaded the Eleventh Circuit that plaintiffs could not sue for every violation of IGRA by direct action under the statute. Tamiami Partners v. Miccosukee Tribe of Indians of Florida, 63 F.3d 1030, 1049 (11th Cir. 1995). We agree with the Eleventh Circuit's conclusion. Where a statute creates a comprehensive regulatory scheme and provides for particular remedies, courts should not expand the coverage of the statute. See National R.R. Passenger Corp. v. National Assoc. of R.R. Passengers, 414 U.S. 453, 458 (1974).[8]
 
 IV.
 
 8
 Our conclusion that IGRA provides no general private right of action and thus that the direct cause of action asserted here must be dismissed does not mean, however, that IGRA provides no remedy at all. Plaintiffs asserted jurisdiction under both IGRA and the APA in their complaint. IGRA provides for the prosecution of administrative claims with the Indian Gaming Commission and for general judicial review of the Commission's decisions under the APA. 25 U.S.C.S 2714. Because any revenue allocation plan must be part of an ordinance approved pursuant to a decision by the Chairman of the Commission, such a decision is subject to review under the APA. 25 U.S.C. S 2710(b). The APA also authorizes an action to compel administrative agencies to issue decisions when such decisions have been "unlawfully withheld or unreasonably delayed." 5 U.S.C. S 706(1).
 
 
 9
 While the district court dismissed plaintiffs' APA claim on the ground that there was no final agency action to review, plaintiffs have argued that they should be allowed to proceed with their APA claim because administrative exhaustion is futile due to the agencies' refusal to act. We are reluctant to consider the appellants' argument at this time because of several factors, including the absence of a complete record of the administrative proceedings, the complexity and peculiarity of the legal questions, and the uncertainty of the statutory allocations of authority among the various governmental agencies. We are not even certain, for example, precisely which issues are currently before the Secretary awaiting his decision, although both the Splinter Group's right to recognition as a tribe (at least for purposes of conducting gaming) and alternatively its right to a share of the Barona Group's gambling proceeds have at one time or another been presented to the Department of the Interior.
 
 
 10
 We do know, however, that the members of the Splinter Group, like all persons, are entitled to a decision that is not "unlawfully withheld or unreasonably delayed. " 5 U.S.C. S 706(1). The Splinter Group has been waiting over five years for a determination either that it is a tribe or that its members have some rights to the Barona Group's gaming revenues. It may be wrong on both counts; but it is, at the least, entitled to a definitive statement making clear which federal agency, if any, has jurisdiction to hear the claims it asserts, and then, assuming jurisdiction exists, an ultimate resolution of those claims.[9] Given that plaintiffs' complaint named Bruce Babbitt, the Secretary, in his official capacity, we direct the district court to treat plaintiffs' APA claim as an action to compel the Secretary to decide their appeal. See 5 U.S.C. S 706(1); ONRC v. Bureau of Land Management, 150 F.3d 1132, 1137 (9th Cir. 1998). We express no opinion on the merits of the claim at this time, except to note that jurisdiction would exist even if the Barona Group were entitled to sovereign immunity.
 
 
 11
 Ideally, this case would be presented to the district court only after a final decision by the appropriate government entity or entities resolving the Splinter Group's claims through a definitive determination of its tribal status and its members' right to revenue from the Barona Group's gaming operations. However, given the record before us, we cannot conclude that the absence of such a final determination precludes plaintiffs from seeking some relief in federal court. The problem here is that what the plaintiffs seek, in part, is a final determination. We leave it to the district court to determine how best to ensure the issuance of a prompt decision by the Secretary (and/or the Commission).
 
 V.
 
 12
 As we have affirmed the district court's ruling with respect to subject matter jurisdiction, we need not reach its ruling with respect to tribal sovereign immunity. We do conclude, however, that the Barona Group is not an indispensable party to plaintiffs' action to compel the Secretary of the Interior to decide its administrative claims, or to plaintiffs' breach of trust action against the United States and the Secretary. While plaintiffs may not sue the Barona Group for a violation of the Indian Gaming Regulatory Act (IGRA) or under the Indian Civil Rights Act (ICRA), they may still pursue their claims regarding their entitlement to administrative action as well as their related breach of trust claim against the United States. We leave it to the district court to determine which, if any, of these claims have merit. For the foregoing reasons, the district court's decision is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.
 
 
 [2]
 In that proceeding, the Barona Group argued, as it does here, that the Splinter Group had severed all tribal relations, except with respect to its continuing interest in the land that remained from the original reservation site prior to the 1932 sale. The Splinter Group, however, claims that it has maintained tribal relations. That issue is not before us on appeal.
 
 
 [3]
 The district court agreed with this, holding that the Gaming Commission was the proper forum in which to bring revenue allocation disputes. However, we are not entirely certain that this is the case. While IGRA requires that the Chairman of the Gaming Commission approve a gaming ordinance, it also provides that a gaming ordinance's revenue allocation plan must be approved by the Secretary of the Interior if that plan includes per capita payments to tribe members. See 25 U.S.C. S 2710(b)(2)(B) (requiring Chairman approval of class II gaming ordinance); 25 U.S.C. S 2710(b)(3) (authorizing the Secretary of Interior to approve per capita revenue allocation plans for class II gaming); 25 U.S.C. S 2710(d)(1) (A)(ii) (incorporating class II gaming authorization requirements for class III gaming). See also text accompanying n.4, infra. At this time, we express no view as to which administrative entity should review revenue allocation plan disputes, or where allocation claims should be filed. Rather, we simply require that the district court consider the Splinter Group's request that it order the Secretary to decide the plaintiffs' pending appeal. If the Secretary believes he has no jurisdiction over the dispute, he should rule accordingly.
 
 
 [4]
 Upon the Splinter Group's motion, we take judicial notice of the letter from the Gaming Commission to counsel for the Splinter Group which states that the Commission cannot act without a definitive determination by the Secretary. We do not consider here whether the Commission's letter itself constitutes an agency decision reviewable under S 2714 of IGRA.
 
 
 [5]
 The Tenth Circuit recognized an exception to the Santa Clara rule in a case in which tribe members had no meaningful remedies available other than through ICRA. Dry Creek Lodge v. Arapahoe and Shoshone Tribes, 623 F.2d 682, 685 (10th Cir. 1980) (granting monetary relief on an ICRA claim). We declined to recognize such an exception in J. Williams Co. v. Fort Belknap, 719 F.2d 979, 981 (9th Cir. 1983). However, there was no suggestion in Fort Belknap that ICRA provided the only meaningful remedy for the plaintiffs in that case. Id. at 984. Nonetheless, we need not decide if we should follow the Tenth Circuit in creating a limited exception to the Santa Clara rule because the plaintiffs are not, at least at this stage of the litigation, without alternative avenues of relief.
 
 
 [6]
 The Barona Group argues that plaintiffs' failure to exhaust tribal and administrative remedies under 25 U.S.C. S 2714 bars its action under ICRA and any other statute. With respect to the direct action under ICRA, the Barona Group's argument is moot in light of our decision regarding that claim. As the Barona Group did not specify which other claims are barred by the failure to exhaust, we decline to rule on its contention with respect to any other statute at this time. It may raise any claim based on failure to exhaust before the district court on remand.
 
 
 [7]
 In Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), the Supreme Court held that Congress lacked authority under the Indian Commerce Clause to abrogate states' sovereign immunity. As a result, section 2710(d)(7) does not permit a suit against a state unless the state waives its sovereign immunity. The practical effect of this holding is to take away from tribes the ability to force states to comply with IGRA's compacting scheme.
 
 
 [8]
 We have held that this rule of construction cannot be applied blindly in the IGRA context, because the statute's operation has been fundamentally altered by the Supreme Court's decision in Seminole Tribe. United States v. Spokane Tribe of Indians, 139 F.3d 1297 (9th Cir. 1998). However, the considerations at issue in Spokane Tribe are not present here, because this case does not involve a dispute that might have been resolved in a suit between a state and a tribe. Nor do we believe that the circumstances here otherwise warrant finding an implied right of action because of the invalidation of the remedy Congress selected.
 
 
 [9]
 It has been suggested in one letter from the Gaming Commission that the proper decisionmaker in this dispute could be the Tribal Council. This assertion is problematic, however, because, according to the DOI, the only tribe to which both the Splinter Group members and the Barona Group members belong is the Capitan Grande Band of Diegueno Mission Indians, which has no tribal council.