451 F.3d 44
 UNITED STATES of America, ex rel. the SAINT REGIS MOHAWK TRIBE, Plaintiff-Counter-Defendant-Appellant
v.
PRESIDENT R.C.-ST. REGIS MANAGEMENT COMPANY and Anderson-Blake Construction Corporation, Defendants-Counterclaimants-Appellees.
No. 05-3823-CV.
 United States Court of Appeals, Second Circuit.
 Argued: January 31, 2006.
 Decided: June 1, 2006.
 
 1
 Daniel A. Seff, Barr & Associates, P.C., Stowe, VT, for Plaintiff-Counter-Defendant-Appellant.
 
 
 2
 Loretta M. Gastwirth, Meltzer, Lippe, Goldstein & Breitstone, L.L.P., Mineola, NY, for Defendant-Counterclaimant-Appellee President-R.C. St. Regis Management Company.
 
 
 3
 Marlene L. Budd, Law Offices of Marlene L. Budd, Esq., Dix Hills, NY, for Defendant-Counterclaimant-Appellee Anderson-Blake Construction Corp.
 
 
 4
 Before: CABRANES and B.D. PARKER, Circuit Judges PRESKA, District Judge*.
 
 LORETTA A. PRESKA, District Judge:
 
 5
 We consider here whether a district court may exercise original jurisdiction over a declaratory judgment action brought pursuant to the former 25 U.S.C. § 81[1] to void a contract for lack of approval alleged to be required under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et seq. Answering that question in the negative, we hold that the district court was without jurisdiction to entertain the action and we affirm the dismissal.
 
 BACKGROUND
 
 6
 On November 7, 1997, Appellant St. Regis Mohawk Tribe ("Tribe") entered into a five-year casino management agreement ("Management Agreement") with Appellee President R.C.-St. Regis Management Company ("President R.C."). As required by IGRA, the Management Agreement was submitted to the National Indian Gaming Commission ("NIGC" or "Commission") for approval. The NIGC approved the Management Agreement on December 26, 1997. Under the Management Agreement, President R.C. was authorized, inter alia, to enter into contracts for the construction of the Akwesasne Mohawk Casino ("Casino"). On January 11, 1998, President R.C. executed a construction contract ("Construction Contract") with Appellee Anderson-Blake Construction Company ("Anderson-Blake") to build the Casino for some $14 million dollars. The Construction Contract was not submitted for NIGC approval.
 
 
 7
 The Casino was completed, and its doors opened on April 11, 1999. Business was not as brisk as expected in the first year of operation, and the Tribe expelled President R.C., bringing in new management several years prior to the expiration of the five-year Management Agreement. President R.C. brought suit for breach of contract in state court, but the action was stayed by stipulation of the parties after the Tribe brought this action to declare the Construction Contract null and void on either of two grounds: first, that the Construction Contract was not approved by the NIGC and, second, that an individual named Gary Melius had surreptitiously maintained a financial interest in the Management Agreement and the Construction Contract notwithstanding the NIGC's indication that it would refuse to approve the Management Agreement if Melius had a financial interest in it. The Management Agreement at § 10.8(A) states that actions between the parties shall be brought in federal district court or, if the federal court determines that it lacks subject matter jurisdiction, in state court. Under the Agreement, at § 11.6, the governing law is as follows: "the laws of the United States of America, and where such laws are non-existent or inapplicable, the laws of the State of New York."
 
 
 8
 On a motion to dismiss, the district court (McAvoy, J.) held that the Construction Contract was collateral to the Management Agreement and therefore subject to approval by the Commission under IGRA. United States ex rel. St. Regis Mohawk Tribe v. President R.C.-St. Regis Mgmt. Co., No. 02 Civ. 845, slip op. at 15 (N.D.N.Y. May 22, 2003)("2003 Decision"). The district court also held that the Tribe's complaint was sufficient to state a claim that the Construction Contract was void because of the lack of NIGC approval and the alleged improper financial interest retained by Gary Melius. Id. at 19-20. Moreover, the district court permitted the use of the qui tam provision of 25 U.S.C. § 81 as a mechanism for bringing the Tribe's declaratory judgment action. See generally id. The district court reasoned that although 25 U.S.C. § 81 had been amended so as not to apply to the circumstances presented here by the time the action was filed, the former version of the statute was still in effect at the time the contract was formed, and its amendment was not retroactive. Id. at 7-9.
 
 
 9
 On a motion for summary judgment, the district court (Hurd, J.) held that the Construction Contract was not a collateral agreement providing for management of all or part of the gaming operation and thus did not require approval by the Commission. See United States ex rel. St. Regis Mohawk Tribe v. President R.C.-St. Regis Mgmt. Co., No. 02 Civ. 845, 2005 U.S. Dist. LEXIS 12456, at *9-10 (N.D.N.Y. June 13, 2005) ("2005 Decision") (citing 25 C.F.R. § 502.15, which defines a "management contract" requiring NIGC approval to include "any ... collateral agreement ... [that] provides for the management of all or part of a gaming operation"): Leaving aside the issue of the retroactive effect of § 81's amendment, the district court held that § 81, which governs contracts with Indians, was inapplicable because "[t]here is no question that the Construction Contract was executed by President [R.C.] and Anderson-Blake, neither of which is an Indian Tribe or [an] individual Indian[]." Id. at *11. The counterclaims against the Tribe were dismissed on grounds of sovereign immunity. Id. at *12.
 
 
 10
 The 2005 Decision noted that "[i]n October 2002 the Tribe sent a letter to the Commission requesting that proceedings be initiated to void or modify the Management Agreement" but that "[t]he action, if any, taken by the Commission in response to the letter is unknown." Id. at *6-7. On January 9, 2004, the Acting General Counsel to the Commission, William Grant, executed an affidavit with an annexed letter opining that the Construction Contract did not require Commission approval. Mr. Grant's letter explained that the Construction Contract deals only with construction and is not related to management of gaming activity.
 
 DISCUSSION
 
 11
 This appeal presents the question of whether a casino construction contract purported to be collateral to a gaming management agreement may be the subject of an action in the district court outside the parameters of IGRA. It also presents the question of whether the Tribe may bring a declaratory judgment action under 25 U.S.C. § 81 to void a casino construction contract to which the Tribe was not a party. At the outset, we examine the statutes.
 
 I. The Statutes: 25 U.S.C. § 81 and IGRA
 
 12
 Congress enacted the precursors to 25 U.S.C. § 81 in the early 1870s. See Act of March 3, 1871, ch. 120, § 3, 16 Stat. 570; Act of May 21, 1872, ch. 177, §§ 1-2, 17 Stat. 136. The statute took its modern form in 1958 and was amended in 2000. When the former § 81 was in effect, contracts between Indians and non-Indians required approval by the Secretary of the Interior ("Secretary") under the terms of the statute. Any contract with an Indian or Indian tribe that was not approved by the Secretary as required by § 81 was "null and void" by the statute's express language. Section 81 authorized a qui tam action in the name of the United States to recover amounts paid by Indians in excess of what was authorized by the Secretary. In this "bounty hunter" action, see United States ex rel. Mosay v. Buffalo Bros. Mgmt., Inc., 20 F.3d 739, 742 (7th Cir. 1994), the statute prescribed that half of any amount recovered go to the relator and the other half to the United States Treasury "for the use of the Indian or tribe by or for whom it was so paid." 25 U.S.C. § 81.
 
 
 13
 In 1988, Congress enacted IGRA, 25 U.S.C. § 2701 et seq., a more detailed statutory framework regulating Indian gaming management agreements and contracts collateral to such agreements. IGRA specifically provides that the authority formerly vested in the Secretary of the Interior under 25 U.S.C. § 81, e.g., approving contracts between Indians and non-Indians, is transferred to the NIGC with respect to contracts regulated by IGRA. See 25 U.S.C. § 2711(h). Under 25 U.S.C. § 2709 (Interim authority to regulate gaming), the Secretary retained authority over Indian gaming until the Commission was organized and its regulations promulgated. Since 1993, when the IGRA regulations were promulgated, Indian gaming management contracts have been subject to approval by the Chairman of the Commission. See 25 U.S.C. § 2711 (Management contracts). A "management contract" is defined in the NIGC regulations as "any contract, subcontract, or collateral agreement between an Indian tribe and a contractor or between a contractor and subcontractor if such contract or agreement provides for the management of all or part of a gaming operation." 25 C.F.R. § 502.15 (Management contract). A collateral agreement is defined as a contract "that is related, either directly or indirectly, to a management contract, or to any rights, duties or obligations created between a tribe ... and a management contractor or subcontractor ...." 25 C.F.R. § 502.5 (Collateral agreement).
 
 
 14
 Under § 2711 of Title 25, gaming management agreements and certain collateral agreements must be submitted to the Chairman of the Commission for approval.[2] 25 U.S.C. § 2711(a)-(b). If the Chairman fails to act on a management contract or collateral agreement submitted for approval within 180 days (or 270 days where the time period is extended), an Indian tribe may bring an action in district court to compel a decision. 25 U.S.C. § 2711(a)(3),(d). "The Chairman, after notice and a hearing, . . . may void any contract if he subsequently determines that any of the [various procedural or substantive requirements governing management contracts that are contained in § 2711] have been violated." 25 U.S.C. § 2711(f).
 
 
 15
 IGRA's judicial review provision, 25 U.S.C. § 2714, provides that "[d]ecisions made by the Commission pursuant to sections 2710, 2711, 2712, and 2713 of this title shall be final agency decisions for purposes of appeal to the appropriate Federal district court pursuant to [the Administrative Procedure Act]." 25 U.S.C. § 2710(d)(7)(A) confers original jurisdiction in the federal district courts only for suits under IGRA in certain limited circumstances not at issue here.[3] By the Commission's regulations, "[m]anagement contracts and changes in persons with a financial interest in or management responsibility for a management contract, that have not been approved by the Secretary of the Interior or the Chairman[,] . . . are void." 25 C.F.R. § 533.7 (Void agreements).
 
 
 16
 Both of the contracts at issue in this case were signed after authority over Indian gaming had been transferred from the Secretary to the Commission, see 25 U.S.C. § 2711(h), but before 25 U.S.C. § 81 was amended so as not to apply to the circumstances presented here. This action was commenced after the amendment of § 81 and after the Commission promulgated its regulations. The parties agree that the Management Agreement was approved as required under IGRA but disagree about whether the Construction Contract required approval. Both sides conceded at oral argument that there had been no final agency action with respect to voiding of the Construction Contract.[4]
 
 
 17
 II. IGRA and Exhaustion of Administrative Remedies
 
 
 18
 The Tribe commenced this action in 2002 as a qui tam action under § 81. It asserted a single claim seeking a declaration that the Construction Contract is void for lack of contract approval by the Commission as required by IGRA. By predicating its declaratory judgment action on an alleged failure to comply with the regulatory regime set out in IGRA, the Tribe's case presents a threshold issue of exhaustion of administrative remedies available through the Commission.
 
 
 19
 "As a rule, plaintiffs must exhaust administrative remedies before seeking redress in federal court." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir.1997) (citing Pavano v. Shalala, 95 F.3d 147, 150 (2d Cir.1996)). "[T]he long settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); see also FTC v. Standard Oil, 449 U.S. 232, 242, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) ("Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise ... [and] leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary.").
 
 
 20
 Where administrative remedies are not prescribed by statute, "a plaintiff's failure to exhaust administrative remedies can be excused if (1) the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) requiring exhaustion would result in irreparable harm." Skubel, 113 F.3d at 334 (citing Pavano, 95 F.3d at 150). Where administrative remedies are statutory, however, exhaustion of remedies is mandatory, and the exceptions do not apply. See, e.g., Booth v. Churner, 532 U.S. 731, 741 & n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ("[W]e stress the point ... that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").
 
 
 21
 Here, the statutory exhaustion requirement could not be more plain. Section 2714 of IGRA reads, "Decisions made by the Commission pursuant to section[ ]... 2711 ... of this title shall be final agency decisions for purposes of appeal to the appropriate Federal district court pursuant to [the Administrative Procedure Act]." If the Tribe is correct in its contention that the Construction Contract required approval pursuant to IGRA, then the administrative remedy available to the Tribe would be submission of the Construction Contract for approval pursuant to 25 U.S.C. § 2711(b).[5] If, upon submission of the contract, the Commission took no action within the statutorily prescribed time frame of 180 days (or, in the event of an extension, 270 days), then the Tribe would be permitted to "bring an action in a United States district court to compel action by the Chairman . . . ." 25 U.S.C. § 2711(d). In the event that the Commission ruled against it, the Tribe could appeal the Commission's decision in United States district court as set forth in 25 U.S.C. § 2714. Similarly, if the Tribe wished to void the Construction Contract on the ground that it was a contract not submitted for approval as required by IGRA, or in which an individual held an improper interest, then the Tribe could request a hearing before the Chairman on the matter pursuant to § 2711(f), after which appeal could be taken pursuant to § 2714. All of the above is written in the conditional tense, of course, because the Tribe availed itself of none of the above-described administrative remedies, and the Court is left to ponder what might have been. By proceeding directly to the district court in an action nowhere authorized under IGRA, the Tribe impermissibly sought a determination outside the administrative review scheme crafted by Congress.
 
 
 22
 IGRA confers original federal district court jurisdiction only in limited circumstances not presented here. See 25 U.S.C. § 2710(d)(7)(A); n.2 ante. That Congress outlined specific circumstances in which district courts have original jurisdiction strongly suggests its intent to channel all other matters through the normal process of judicial review of final agency action under the Administrative Procedure Act ("APA"). See Hartman v. Kickapoo Tribe Gaming Comm'n, 319 F.3d 1230, 1232-33 (10th Cir.2003); Cheyenne-Arapaho Gaming Comm'n v. NIGC, 214 F.Supp.2d 1155, 1171 (N.D.Okla.2002) (citing Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 208, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994)). The clear language of IGRA § 2714, permitting appeal to the district court only after administrative exhaustion, dispels any remaining doubt. "[W]e adhere to `[a] frequently stated principle of statutory construction[:] when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.'" Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fl., 63 F.3d 1030, 1049 (9th Cir.1995) (quoting Nat'l R.R. Passenger Corp. v. Nat'l Assoc. of R.R. Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974)(second and third alteration in original)).
 
 
 23
 The Tribe argues that administrative exhaustion should not be required in this case because IGRA and its implementing regulations provide no mechanism for the Commission to render decisions with respect to contracts that have not been approved, such as the Construction Contract at issue here. See 25 C.F.R. § 535.3 (Post-approval non-compliance). This is an unnecessarily narrow reading of the statute and its implementing regulations. Taken together, 25 U.S.C. § 2711(a)(3),(f) (Management contracts), 25 C.F.R. § 502.5 (Collateral agreement), 25 C.F.R. § 502.15 (Management Contract), 25 C.F.R. § 533.7 (Void agreements), and 25 C.F.R. § 535.3 (Post-approval non-compliance), demonstrate that the Commission has broad power to determine what does and does not require approval. As discussed, supra, the Commission's final decisions on contract approval matters are subject to review in federal district court under § 2714, and a failure to take action on a contract approval matter is subject to an action in district court to compel such action under § 2711(d). Indeed, even where a tribe has not proceeded strictly under IGRA but has joined the NIGC as a party, at least one court has construed the matter as an action to compel and remanded the case to the NIGC for a decision. See, e.g., Hein v. Capitan Grande Band of Diegueno Mission Indians, 201 F.3d 1256, 1261 (9th Cir.2000). As it is, this Court, like the district court below, is without jurisdiction to order any form of relief because the Tribe failed to comply with the mandatory, statutorily prescribed remedies that must be exhausted before proceeding to the federal courts.[6]
 
 III. IGRA supersedes Section 81
 
 24
 The Tribe contends that the Construction Contract comes within the ambit of IGRA and required approval pursuant to 25 U.S.C. § 2711 and 25 C.F.R. § 533.7. With no statutory provision under IGRA that would enable the Tribe to proceed directly to federal district court, and having failed to exhaust remedies under IGRA, the Tribe attempts to proceed under 25 U.S.C. § 81. Likening the amendment of § 81 to the retroactive application of a newly passed statute, the district court in the 2003 Decision held that "the unamended qui tam provision of 25 U.S.C. § 81 which was in effect at the [Management C]ontract signing [but amended prior to commencement of the action] governs this action." This conflating of the two statutory schemes was erroneous.
 
 
 25
 Before the statute's amendment, the Seventh Circuit addressed the survival of the former § 81 in the era of IGRA where gaming management and related agreements are concerned:
 
 
 26
 When section 81 is read in conjunction with the Indian Gaming Regulatory Act, two distinct, successive regulatory regimes can be seen. One is administered by the Bureau of Indian Affairs under section 81, the other by the National Indian Gaming Commission under the Indian Gaming Regulatory Act. In the first regime, contracts relating to Indian lands, including casino management contracts, must be submitted to the Bureau for approval under criteria undefined by statute or regulation; failure to submit exposes the contractor to the fell sanction of a qui tam suit. In the second regime, a class of contracts—casino management contracts—are carved out of section 81 and subjected to the exclusive regulatory authority of the new Commission administering the new Act, along with certain contracts—contracts collateral to casino management contracts—that never were subject to section 81. 25 U.S.C. § 2711(a)(3); 25 C.F.R. § 502.5. Violations of the Act, including failure to submit contracts required to be submitted to the Commission for approval, subject the violator to civil penalties levied and collected by the Commission in proceedings authorized by the Act.
 
 
 27
 We doubt that the qui tam provision of section 81 remains applicable to contracts now governed by the Indian Gaming Regulatory Act. Contractors would be subject to enormous legal risk that one of their contracts with an Indian tribe might be held to be a collateral agreement that they should have but failed to file, in which event they would have to repay everything they had received under the contract. Qui tam liability would expand indefinitely at the very moment that Congress had created a new administrative remedy and vested its enforcement in a new, specialized agency with its own detailed, measured, modern set of remedies.
 
 
 28
 Mosay, 20 F.3d at 743 (emphases added). Technically, the language quoted above from Mosay is dicta because the court in Mosay was not presented squarely with the issue now before this Court. What Mosay expressed as a doubt, however, we now hold definitively: where gaming management agreements (and collateral agreements) are concerned, IGRA superseded § 81, leaving no remedy for the Tribe under § 81 on the subject matter at issue here.
 
 
 29
 The plain language of the statute shows a clear Congressional intent to transfer all authority over gaming management vested in the Secretary under § 81 to the Commission upon implementation of IGRA. The Secretary "continue[d] to exercise those authorities vested in the Secretary... relating to the supervision of Indian gaming until such time as the Commission [wa]s organized and prescribe[d] regulations." 25 U.S.C. § 2709 (Interim authority to regulate gaming). After the Commission promulgated its regulations in 1993, however, the Secretary was divested of interim authority to regulate gaming. The relevant IGRA provision states that "[t]he authority of the Secretary under section 81 of this title, relating to management contracts regulated pursuant to this chapter, is hereby transferred to the Commission." 25 U.S.C. § 2711(h). Although § 81 remained in effect at the time the Management Agreement and Construction Contract were signed in 1997 and 1998, respectively, the transfer of authority over such contracts from the Secretary to the NIGC already had been effected by the time the Tribe commenced this action. We may not continue to recognize § 81 remedies with respect to Indian gaming agreements where Congress has expressly replaced those remedies with the detailed regulatory framework and remedies set forth in IGRA.
 
 
 30
 What the Tribe urges, in essence, is that the federal courts enforce a hybrid statute in which the hammer of § 81—a qui tam action in federal court—is brought down upon the anvil of IGRA's collateral agreement approval provisions. What the Tribe ignores, however, is that the hammer it seeks to wield has been replaced with a different hammer, which the Tribe failed to pick up—administrative remedies before the Commission that it has failed to exhaust. Contrary to the analysis in the 2003 Decision, Congress' replacing the § 81 remedy available at the time the Management Contract was signed is not analogous to the retroactive application of a newly-passed statute. Here, Congress has merely replaced one remedy with another without undermining the Tribe's substantive rights. Accordingly, the § 81 remedy was not available at the time this action was commenced.
 
 
 31
 Even if the former § 81 did apply to the Tribe's action, that statute did not provide a right to bring a qui tam action for declaratory judgment. "In our jurisprudence, there is no common law right to maintain a qui tam action; authority must always be found in legislation." Conn. Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 84 (2d Cir.1972). The qui tam provision of the former § 81 was worded specifically in terms of recovery of money or property. In particular, the statute provided that with respect to an unapproved contract,
 
 
 32
 all money or other thing of value paid to any person by any Indian or tribe ... may be recovered by suit in the name of the United States ... and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the Treasury for the use of the Indian or tribe by or for whom it was so paid.
 
 
 33
 25 U.S.C. § 81. This statutory provision allowed for "bounty hunter" suits, but nowhere provides the right to sue for other forms of relief. See U.S. ex rel. Foulds v. Texas Tech Univ., 171 F.3d 279, 294 n. 24 (5th Cir.1999) (citing United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456, 459-60 (5th Cir.1977), for the proposition that a "qui tam plaintiff has no standing to seek [a] declaratory judgment against [a] defendant"). Absent specific authority to sue for an injunction or declaratory judgment on behalf of the United States, private citizens are not so empowered. Qui tam provisions create incentives for individuals to assert the interests of the United States in litigation. In most circumstances the United States has an interest in recovering money owed to it. Declaratory judgments and injunctions are much more complicated, however, and there are myriad policy considerations involved in whether the United States would want to seek relief and, if so, in what form. In the absence of statutory authority, an individual is not empowered to make such decisions on behalf of the United States.
 
 
 34
 Finally, to the extent that the Tribe seeks to have the Construction Contract declared void due to an improper financial interest held by Gary Melius in President R.C. and Anderson-Blake, the district court lacked subject matter jurisdiction over the action for reasons already discussed. If, on the one hand, the Construction Contract was the sort of collateral agreement requiring NIGC approval, then the Tribe's remedies are set forth in IGRA, see 25 U.S.C. § 2711(f), and the Tribe has failed to exhaust them. See supra § II. If, on the other hand, the Construction Contract was not the sort of collateral agreement requiring NIGC approval, then the former § 81, even if it were still applicable, would not apply because no Indian or tribe is a party to the Construction Contract.
 
 CONCLUSION
 
 35
 For the reasons stated above, we affirm the district court's dismissal of the Tribe's § 81 action against President R.C. and Anderson-Blake.
 
 
 
 Notes:
 
 
 *
 The Honorable Loretta A. Preska, District Judge, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Before being amended by the Indian Tribal Economic Development and Contracts Encouragement Act of 2000, Pub.L. No. 106-179, § 2, 114 Stat. 46, 46-47 (2000), 25 U.S.C. § 81 read, in pertinent part, as follows:
 No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value ... unless such contract or agreement be executed and approved as follows:
 First. Such agreement shall be in writing, and a duplicate of it delivered to each party.
 Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.
 ...
 All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the Commissioner and Secretary for such services, may be recovered by suit in the name of the United States in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the Treasury for the use of the Indian or tribe by or for whom it was so paid.
 
 
 [2]
 25 U.S.C. § 2711 explicitly applies to "Class II" gaming management contracts. IGRA divides Indian gaming into three classes. The term "Class I" gaming, which is not relevant here, relates to gaming at tribal ceremonies and the like. 25 U.S.C. § 2703(6). The term "Class II" gaming covers bingo and bingo-like gamesId. § 2703(7). The term "Class III" gaming concerns all other forms of gaming that are not covered by Class I and Class II. Id. § 2703(8).
 Here, the Casino offered Class II and Class III gaming. Although Class III gaming is not specifically referenced in 25 U.S.C. § 2711, Class III gaming contracts are reviewed pursuant to most of the standards set forth in § 2711. See id. § 2710(d)(9). 25 U.S.C. § 2710(d)(9) does not, however, explicitly apply the collateral agreement standard in § 2711(a)(3) to Class III gaming contracts, but the NIGC has done so by regulation. See 25 C.F.R. § 533.1 (requiring agency review of management contracts for Class II and Class III gaming); id. § 502.15 (defining management contract to include "any contract, subcontract, or collateral agreement between an Indian tribe and a contractor or between a contractor and a subcontractor if such contract or agreement provides for the management of all or part of a gaming operation"). Thus, for this analysis, we need not distinguish between the interpretation of the Management Agreement and the Construction Contract for Class II gaming purposes and Class III gaming purposes.
 
 
 [3]
 Specifically, 25 U.S.C. § 2710(d)(7)(A) provides, in pertinent part, as follows:
 The United States district courts shall have jurisdiction over —
 (i) any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact ... or to conduct such negotiations in good faith,
 (ii) any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact... that is in effect, and
 (iii) any cause of action initiated by the Secretary to enforce the procedures prescribed [in certain circumstances when a State does not consent to a proposed compact submitted by a mediator].
 Pursuant to IGRA, Class III gaming is to be regulated by compacts between states and tribes. See 25 U.S.C. § 2710(d)(3). To the extent 25 U.S.C. § 2710(d)(7)(A) allowed for suits against non-consenting states in federal court to enforce obligations related to the entry into such compacts, it was held to violate the Eleventh Amendment to the Constitution in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 47, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)("We hold that notwithstanding Congress' clear intent to abrogate the States' sovereign immunity, the Indian Commerce Clause does not grant Congress that power, and therefore § 2710(d)(7) cannot grant jurisdiction over a State that does not consent to be sued.").
 
 
 [4]
 The Commission's acting general counsel, in a January 9, 2004 letter, stated that the Construction Contract was not void for lack of approval because Commission approval was not required. Though neither side argues to the contrary, we note that the acting general counsel's letter does not constitute a final agency decision subject to appeal
 The Supreme Court utilizes a two part test to determine whether an agency action is final for purposes of the APA: "First, the action must mark the consummation of the agency's decisionmaking process-it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."
 In re: Sac & Fox Tribe of the Mississippi in Iowa/Meskwaki Casino Litig., 340 F.3d 749, 756 (8th Cir.2003) (quoting Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)). Neither part of the test is satisfied here. In addition, § 2714 specifies that a decision by the Commission may be appealed to federal district court pursuant to the APA. The opinion letter here, though offered by the Commission's acting general counsel, is merely advisory and does not constitute a final agency decision capable of being appealed. Cheyenne-Arapaho Gaming Comm'n v. NIGC, 214 F.Supp.2d 1155, 1167-68 (N.D.Okla.2002).
 
 
 [5]
 Although § 2711 pertains to approval of management contracts, the statute provides, "For purposes of this chapter, any reference to the management contract ... shall be considered to include all collateral agreements to such contract that relate to the gaming activity." 25 U.S.C. § 2711(a)(3). Thus, the approval provisions that apply to management contracts apply equally to collateral agreements
 
 
 [6]
 We decline to hold that regulation of Indian gaming contracts under IGRA creates federal question jurisdiction over any contract claim relating to Indian gaming. In other words, "we reject the proposition that statutory requirements governing federal approval of certain contracts between Indians and non-Indians give rise to federal common law governing such contracts."Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 753 (2d Cir.1996).